OPINION
{¶ 1} Scott Stoner ("Stoner") was convicted after a bench trial in the Clark County Municipal Court of violating a domestic violence civil protection order, in violation of R.C. 2919.27(A)(1). The court ordered Stoner to pay a $300 fine and court costs. The sentence was stayed pending appeal. *Page 2 
 {¶ 2} On appeal, Stoner argues that the trial court erred in failing to grant his Crim. R. 29(A) motion for judgment of acquittal and that his conviction was against the manifest weight of the evidence. For the following reasons, the judgment will be affirmed.
 I {¶ 3} According to the State's evidence, Scott Stoner and Tristin Stoner ("Tristin") are legally separated, and on January 22, 2008, the Clark County Court of Common Pleas, Domestic Relations Division, entered a domestic violence civil protection order ("CPO") as part of their divorce proceeding. The CPO named Tristin and the couple's two children as persons protected by the order. Among the CPO's provisions, the order required Stoner "not to be present within 500 feet * * * of any protected persons wherever protected persons may be found, or any place the Respondent knows or should know the protected persons are likely to be * * *." Stoner acknowledged that he was subject to a valid CPO.
 {¶ 4} On May 25, 2008, the Sunday of Memorial Day weekend, Tristin was outside in the front and side yards of her home at 3039 Windy Ridge Drive when she heard Stoner's voice. Tristin became alarmed, and she "kind of took a couple of steps forward" to look for Stoner. Tristin saw Stoner at the home of Brian and Tara Herier, located at 5593 Adaway Trail. The Heriers' home is located on a corner lot, two homes down from 3039 Windy Ridge Drive, the Stoners' former marital home and where Tristin continued to reside.
 {¶ 5} Upon seeing Stoner, Tristin "immediately went into the house" and told her friend, Richard Pilgram, who was inside, that she had just seen Stoner on the patio of her neighbors' home. Pilgram described Tristin as "crying," "shaky," and "very nervous," and he stated that she "couldn't sit down." Tristin decided that they needed to leave her residence. She *Page 3 
called for her son to come inside; she, Pilgram, and her son got into her vehicle; and Pilgram drove the group to Tristin's parents house. As Pilgram drove past the Heriers' home, he saw Stoner's vehicle — a yellow, four-door Jeep Wrangler with the vanity plate, "SPOILED" — in the Heriers' driveway. Approximately ten minutes had passed between the time that Tristin saw Stoner and the three left the residence.
 {¶ 6} Tristin called the police upon reaching her parents' home, and Clark County Sheriffs Deputy Scott Elliott responded to that home. Tristin told Elliott that she had been at her house on Windy Ridge Drive when she had observed her husband at a neighbor's house and that it had upset her. Tristin informed Elliott that she had a CPO, and the deputy confirmed through dispatch that it was an active CPO.
 {¶ 7} Elliott drove to 3039 Windy Ridge Drive and measured the distance between Tristin's and the Heriers' properties. Elliott testified that he measured along the roadway from the edge of Tristin's driveway to a point on the road in line with the back of the Heriers' patio area. The distance between these two points was 215 feet. Elliott indicated that he did not measure from the spot where Tristin said she had been in the yard.
 {¶ 8} During redirect questioning, the prosecutor presented Elliott with State's Exhibit 2, an aerial photograph which showed the Heriers' home and the residence next to it, 3055 Windy Ridge Drive; Tristin's home was not shown, and Elliott incorrectly identified 3055 Windy Ridge Drive as Tristin's residence. Upon re-cross examination, Elliott marked his measurement on State's Exhibit 2; the notation indicated that he had measured starting at the driveway of 3055 Windy Ridge Drive, the home between Tristin's and the Heriers'.
 {¶ 9} After completing the measurements, Elliott located Stoner at a different residence *Page 4 
near the intersection of Windy Ridge Drive and Morris Road, more than 500 feet from Tristin's home. Elliott told Stoner about the allegation that he had violated the CPO. Elliott did not ask Stoner why he was at the Heriers' residence, how long he had stayed, or the purpose for the visit. Stoner was very cooperative and amicable. Stoner responded to the deputy that "he didn't know that it was against the rules to go to a friend's house." Stoner admitted that he had been at the Heriers' home, but he told Elliott that he was not aware that his presence there was a violation of the CPO.
 {¶ 10} After Elliott's testimony, Stoner moved for a judgment of acquittal under Crim. R. 29(A), arguing that the record reflected that Tristin resided at 3039 Windy Ridge Drive, but that Elliott had testified that he had measured 215 feet from the edge of the drive at 3055 Windy Ridge Drive. Stoner asserted that the State had failed to establish a violation of the 500 foot distance requirement. The State responded that Elliott mistakenly identified Property A on State's Exhibit 2 as Tristin's property, but that Elliott "did testify that he clearly measured from the * * * victim's property to the neighbor's property at 5583." The trial court overruled the Crim. R. 29(A) motion without stating its reasons.
 {¶ 11} Stoner testified on his own behalf, and he presented the testimony of the Heriers and of another former neighbor, Steven Swan. According to Stoner's evidence, Stoner and his girlfriend stopped by the Heriers' home to invite the Heriers to a party occurring at a mutual friend's home a short distance away. Brian Herier was in the backyard when Stoner arrived, and Stoner went onto the patio to talk with him. While they were talking, Tara stated, "Don't turn around guys. Tristin's driving by now." Stoner turned and saw the back of Tristin's car driving away. Stoner left a few minutes later. He and Brian both testified that Stoner's visit lasted no *Page 5 
more than ten minutes.
 {¶ 12} Swan testified that he lived across the street from Tristin at 3040 Windy Ridge Drive and that, at Stoner's request, he measured the distance from the end of Tristin's driveway to the end of the Herrier's driveway with a measuring wheel. Swan reported the distance to be 529 feet along the roadway. (According to the aerial photograph of the homes, the Heriers' driveway is located along Adaway Trail near the property line farthest from the intersection of Windy Ridge Drive and Adaway Trail.) Swan testified, however, that if he were to measure from Tristin's property to the Heriers' patio, measuring through the yards rather than along the road, the distance would "probably" be less than 500 feet.
 {¶ 13} Brian testified that he "assumed" the distance between his backyard and Tristin's house was more than 500 feet, but he had no basis for that belief. Brian also "guessed" that the distance measured by the deputy would accurately reflect the distance between Tristin's driveway and his back patio.
 {¶ 14} In his testimony, Stoner admitted being in the Heriers' home, but he stated that he had not believed that he was violating the CPO during that visit and that he had no intention of violating the CPO. Stoner testified that he never saw Tristin.
 {¶ 15} On cross-examination, Stoner acknowledged that he knew the Heriers' property was within two properties of Tristin's home. Stoner admitted that he had the Heriers' telephone number in his cell phone and that he could have called them to extend the invitation rather than going to their house. Stoner stated that he thought "it'd be easier to drive over there and invite them than call them on the phone." Stoner further testified that he had never measured the distance between the properties, but he thought the distance was more than 500 feet because it *Page 6 
looked "pretty far away."
 {¶ 16} After Stoner concluded his presentation of evidence in his defense, the State called Elliott to testify on rebuttal. At that time, Elliott was asked to show his measurement on State's Exhibit 3, an aerial photograph which included both the Heriers' and Tristin's properties. Elliott's notation on this exhibit indicated that he started measuring at 3039 Windy Ridge Drive, Tristin's residence. Elliott indicated that he was mistaken when he marked State's Exhibit 2, and he testified that State's Exhibit 3 accurately reflected the properties and his measurement.
 {¶ 17} Upon consideration of the evidence, the trial court found Stoner to be guilty of violating R.C. 2919.27(A)(1), reasoning that "Scott Stoner recklessly violated the terms of the Protection Order by being within 500 feet of a place where he knew or should have known that Tristin Stoner was likely to be. That place was the home where the defendant formerly lived with Tristin Stoner. With heedless indifference to the consequences, Defendant Stoner perversely disregarded the known risk that the rear of 5583 Adaway Trail was within 500 feet of the side yard of 3039 Windy Ridge."
 {¶ 18} Stoner appeals from his conviction, raising two assignments of error.
 II {¶ 19} Stoner's first assignment of error states:
 {¶ 20} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT WHEN IT OVERRULED THE DEFENDANT-APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL MADE AT THE CONCLUSION OF THE STATE'S CASE."
 {¶ 21} In his first assignment of error, Stoner claims that the trial court should have *Page 7 
granted his Crim. R. 29(A) motion for a judgment of acquittal, because the State failed to offer evidence that Stoner had acted recklessly and that he was, in fact, within a 500 foot radius of Tristin.
 {¶ 22} We note that Stoner failed to renew his Crim. R. 29(A) motion at the end of the trial. In a jury trial, "[t]he purpose of a motion for judgment of acquittal is to test the sufficiency of the evidence and, where the evidence is insufficient, to take the case from the jury."Dayton v. Rogers (1979), 60 Ohio St.2d 162, 163, overruled on other grounds, State v. Lazzaro, 76 Ohio St.3d 261, 1996-Ohio-397. "In the non-jury trial, however, the defendant's plea of not guilty serves as a motion for judgment of acquittal, and obviates the necessity of renewing a Crim. R. 29 motion at the close of all the evidence." Id. Accordingly, Stoner did not waive any error committed by the trial court by failing to renew his Crim. R. 29(A) motion. Miamisburg v. Turner (Feb. 11, 2000), Montgomery App. No. 17928.
 {¶ 23} When reviewing the denial of a Crim. R. 29(A) motion, an appellate court applies the same standard as is used to review a sufficiency of the evidence claim. State v. Thaler, Montgomery App. No. 22578, 2008-Ohio-5525, at ¶ 14, citation omitted. "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." State v. Wilson, Montgomery App. No. 22581, 2009-Ohio-525, at ¶ 10, citing State v.Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52. When reviewing whether the State has presented sufficient evidence to support a conviction, the relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Dennis, 79 Ohio St.3d 421, *Page 8 
430, 1997-Ohio-372, citing Jackson v. Virginia (1979), 443 U.S. 307,319, 99 S.Ct. 2781, 61 L.Ed.2d. 560. A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." Id.
 {¶ 24} We emphasize that, in reviewing the trial court's denial of a Crim. R. 29(A) motion at the close of the State's case, we consider only the evidence then available to the trial court. See Turner, supra. Because the testimony of Stoner's witnesses and Elliott's rebuttal evidence had not yet been presented when Stoner made his Crim. R. 29 motion, we cannot consider that evidence for purposes of reviewing the trial court's denial of his Crim. R. 29(A) motion.
 {¶ 25} R.C. 2919.27(A)(1) provides that "[n]o person shall recklessly violate the terms of * * * [a] protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code[.]" "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2901.22(C).
 {¶ 26} First, Stoner claims that the State failed to present sufficient evidence that his conduct was reckless. He argues that the State proved "only the de facto presence of the Appellant" and that there was no evidence that his conduct demonstrated a heedless indifference to the consequences. Specifically, Stoner argues that there was no evidence that he was aware that his presence at the Heriers' home was a violation of the CPO or was within 500 feet of his wife. He emphasized that he was there for a short period of time, and that his behavior while at *Page 9 
the Heriers' home did not indicate a "heedless indifference" to the consequences.
 {¶ 27} We disagree. Initially, we note that Stoner has conceded that the State offered evidence of the existence of a valid protection order. Tristin testified that Stoner was present at a hearing about the CPO and that he had a copy of the order. Thus, Stoner knew or should have been aware of the requirement that he was "not to present within 500 feet * * * of any protected persons wherever protected persons may be found, or any place the Respondent knows or should know the protected persons are likely to be * * *."
 {¶ 28} The State presented evidence that 3039 Windy Ridge Drive was the Stoners' marital residence and that Tristin has continued to reside there since their separation. Moreover, at the time that Stoner visited with the Heriers, Tristin was outside in her yard and her garage door was open. Tristin testified that it should have been clear to "anybody driving by" that she was home, and she stated that the Heriers should have been able to see her if they had been looking. Based on the evidence, the trial court could have reasonably determined that Stoner knew or should have known that Tristin was likely to be found at 3039 Windy Ridge Drive, his former residence, on May 25, 2008.
 {¶ 29} Despite knowledge that Tristin resided at 3039 Windy Ridge Drive, Stoner went to a residence two doors down from Tristin's home. From this distance, Tristin could hear Stoner talking in a normal speaking voice and she believed that the properties were less than 500 feet apart. Deputy Elliott testified that the distance between Tristin's driveway and a point of the road in line with the Heriers' patio was 215 feet, well less than the 500 foot distance required by the CPO.
 {¶ 30} Although the State's evidence did not suggest that Stoner had any contact, or *Page 10 
tried to have any contact, with Tristin during his visit to the Heriers, the evidence established that Stoner went to a residence two doors down from his wife's residence, where he should have known that she was likely to be. The State further presented evidence that Stoner was aware of the close proximity of the two homes. Based on the deputy's measurement of the distance between the properties and Tristin's evidence that she could hear Stoner speaking in a normal speaking voice, the trial court could have reasonably concluded, when viewing the evidence in the light most favorable to the State, that Stoner recklessly disregarded the risk that the Heriers' patio would be less than 500 feet from Tristin's property, where she was likely to be.
 {¶ 31} Second, Stoner claims that the State failed to present sufficient evidence that he, in fact, violated "the 500 foot radius of exclusion." Stoner argues that Elliott testified during the State's case-in-chief that he had measured from the end of the driveway located at 3055 Windy Ridge Drive, not from 3039 Windy Ridge Drive, which is Tristin's residence. Stoner further asserts that the State failed to produce evidence that Tristin and Stoner were ever within 500 feet of each other.
 {¶ 32} Tristin and Elliott both testified regarding the distance between Tristin's and the Heriers' properties. Although Tristin did not provide an exact distance between the two properties, she stated that the neighbors' (Heriers') property was within 500 feet.
 {¶ 33} Elliott testified on direct examination that he went to Tristin's property after talking with her at her parents' home and that he measured "just by roadside * * * from her driveway to the back patio area where she [Tristin] said he [Stoner] was." Elliott initially stated that this distance was 260 feet.
 {¶ 34} On cross-examination, Elliott clarified that he had measured "from the roadside *Page 11 
from her property to the roadside of where the patio is, just between the two there" and that he did not measure from where Tristin had been in the yard. When defense counsel informed Elliott that he had listed the distance as 215 feet in his narrative report, Elliott stated that "[w]hatever I put in the narrative" was the correct distance. Elliott further indicated that he had been told to measure from property to property.
 {¶ 35} On redirect examination, the prosecutor presented State Exhibit 2 to Elliott and asked him to identify the property marked as "A." The property was 3055 Windy Ridge Drive, which Elliott incorrectly identified as Tristin's residence. Elliott again testified that he measured along the road from the edge of Tristin's driveway to "beside the patio on the road." On re-cross examination, defense counsel had Elliott mark where he began to measure and where he stopped. Elliott had marked his beginning location as the edge of the driveway of 3055 Windy Ridge Drive.
 {¶ 36} In our view, the trial court correctly found that the State presented sufficient evidence that Stoner came within 500 feet of Tristin or of any place that Stoner knew or should have known that Tristin was likely to be. The trial court could have elected to believe Elliott's testimony on direct examination that he had gone to Tristin's property and that he had measured from her driveway to a point on the road in line with the Heriers' patio, with the measurement being 215 feet. Elliott repeated on cross-examination that he had measured from her property. This evidence, if believed, was sufficient to establish that Stoner was approximately 215 feet, and thus less than 500 feet, from Tristin's property.
 {¶ 37} The State's introduction of the aerial photograph was demonstrative evidence aimed to assist the trial court in understanding the relationship between the properties. The fact *Page 12 
that Elliott misidentified 3055 Windy Ridge Drive — an address that had not been previously mentioned at trial — as Tristin's property in response to questions from the prosecutor during redirect examination and marked measurements between 3055 Windy Ridge Drive and the Heriers' property during re-cross examination, undermined the deputy's credibility. However, the trial court was free to disregard this additional testimony and to rely upon the deputy's prior direct examination testimony, based on his memory, that he had, in fact, gone to Tristin's property and had measured from her driveway and not that of 3055 Windy Ridge Drive. Construing Tristin's and Elliott's testimony in the light most favorable to the State, the State presented sufficient evidence that Stoner was within 500 feet of Tristin or her property, where Stoner should have known that she was likely to be present.
 {¶ 38} Stoner's first assignment of error is overruled.
 III {¶ 39} Stoner's second assignment of error states:
 {¶ 40} "THE VERDICT OF THE TRIAL COURT CONVICTING THE APPELLANT OF VIOLATING THE CIVIL PROTECTION ORDER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 41} In his second assignment of error, Stoner claims that his conviction was against the manifest weight of the evidence.
 {¶ 42} "[A] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive."Wilson at ¶ 12. When evaluating whether a conviction is contrary to the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence *Page 13 
and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."Thompkins, 78 Ohio St.3d at 387, citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 43} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. State v.Lawson (Aug. 22, 1997), Montgomery App. No. 16288. However, we may determine which of several competing inferences suggested by the evidence should be preferred. Id.
 {¶ 44} The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. Wilson at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. Martin, 20 Ohio App.3d at 175.
 {¶ 45} Upon review of the evidence, we find ample evidence to support Stoner's conviction for violating the CPO.
 {¶ 46} As stated above, Stoner knew that Tristin resided at 3039 Windy Ridge Drive yet, despite this knowledge, he went to a residence two doors down from Tristin's home. Stoner testified on cross-examination that he had the Heriers' telephone number in his cell phone and that he could have called them to invite them to the party. However, Stoner chose to drive to their house and to talk to the Heriers on their back patio, where Tristin was able to hear Stoner talking in a normal speaking voice. Although Stoner denied that he intended to violate the CPO or that he was aware that his presence at the Heriers' home violated the order, the trial court could reasonably *Page 14 
infer from his conduct that Stoner, with heedless indifference to the consequences, perversely disregarded a known risk that his presence at the Heriers would place him within 500 feet of Tristin or a place where she was likely to be.
 {¶ 47} Moreover, considering all the evidence presented, the trial court could reasonably conclude that Stoner was within 500 feet of Tristin or a place where she was likely to be. On rebuttal, Elliott indicated that his testimony regarding State's Exhibit 2 was mistaken, and he identified 3039 Windy Ridge Drive as Tristin's residence. Elliott marked on State's Exhibit 3 that he had measured from the driveway of 3039 Windy Ridge Drive to a point along the road in line with the Heriers' patio, a distance of 215 feet. Accepting Elliott's measurement as accurate, the trial court could have reasonably concluded, based upon a review of the aerial photograph, that Stoner was within 500 feet of Tristin or her property while he was speaking with Brian Herier. Swan further testified that, if he were to measure through the yards to the Heriers' back patio, the distance would probably be less than 500 feet.
 {¶ 48} Stoner's second assignment of error is overruled.
 IV {¶ 49} Having overruled both assignments of error, the judgment of the trial court will be affirmed.
DONOVAN, P.J. and FAIN, J., concur. *Page 1