[Cite as *State v. Ayers*, 2013-Ohio-5337.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO                                                   :
                                                               :       Appellate Case No. 25563
          Plaintiff-Appellee                                   :
                                                               :       Trial Court Case No. 2012-CR-1519
v.                                                             :
                                                               :
NESBITT L. AYERS                                               :       (Criminal Appeal from
                                                               :        Common Pleas Court)
          Defendant-Appellant                                  :
                                                               :

· · · · · · · · · ·

O P I N I O N

Rendered on the 6th day of December, 2013.

· · · · · · · · · ·

MATHIAS H. HECK, JR., by MICHELE D. PHIPPS, Atty. Reg. #0069829, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
          Attorney for Plaintiff-Appellee

CANDI S. RAMBO, Atty. Reg. #0076627, Flanagan, Lieberman, Hoffman & Swaim, 15 West Fourth Street, Suite 100, Dayton, Ohio 45402
          Attorney for Defendant-Appellant

· · · · · · · · · · · ·

FAIN, P.J.

{¶ 1}     Defendant-appellant Nesbitt Ayers appeals from his conviction and sentence for

Possession of Cocaine. He contends that the trial court abused its discretion by permitting the introduction of hearsay evidence during trial. He further contends that the State did not present evidence sufficient to sustain the conviction, as a result of which the trial court should have granted his Crim.R. 29 motion for a judgment of acquittal. Ayers also contends that his conviction is against the manifest weight of the evidence. Ayers next contends that the prosecutor committed reversible misconduct. Finally, Ayers contends that he did not receive effective assistance of counsel during trial.

{¶ 2} We conclude that the trial court did not abuse its discretion with regard to the admission of evidence. We further conclude that the conviction is supported by evidence sufficient to demonstrate that Ayers committed the offense. Neither is the conviction against the manifest weight of the evidence. We conclude that two statements the prosecutor made, one during opening statement, and one during closing argument, while improper, were not so prejudicial as to rise to the level of plain error, when considered in their respective contexts. Finally, we find that on this record, Ayers has not demonstrated ineffective assistance of counsel.

{¶ 3} Accordingly, the judgment of the trial court is Affirmed.

### I. The Offense

{¶ 4} One day in May 2012, City of Dayton Police Detective Keith Coberly was on duty and was parked in his car in the area of Third and Main Streets when he observed Ayers walking on Third Street. Coberly observed Ayers meet a woman and engage in a conversation during which he saw Ayers reach into his left front pants pocket with his left hand. Coberly observed Ayers pull his hand out of his pocket and hold it out to the woman in a cupping motion.

Coberly then noted that the woman used her left hand to take an item out of Ayer's left hand. Coberly could not see the item that changed hands. Based upon his experience, Coberly concluded that he had witnessed a drug transaction.

{¶ 5} After Ayers and the woman separated, Coberly followed the woman, later identified as Mandy Harris. Coberly stopped Harris and identified himself as a police officer. He noted that her left hand was balled into a fist. Coberly grabbed Harris's hand and instructed her to open it. When Harris opened her fist, Coberly observed what he recognized as crack cocaine.

{¶ 6} Coberly seized the crack cocaine and told Harris that he had seen her purchase it from a man on East Third Street. He stated that he would not charge Harris if she completed a truthful witness statement detailing the event. Harris did as requested. Thereafter, Ayers was arrested. At the time of his arrest, Ayers had two cellular telephones and some personal items in his possession. He did not have any drugs in his possession.

## II. The Course of Proceedings

{¶ 7} Ayers was indicted on one count of Possession of Cocaine (less than five grams) in violation of R.C. 2925.11(A). Following a jury trial, Ayers was found guilty as charged. He was sentenced to a nine-month prison term. From his conviction and sentence, Ayers appeals.

## III. The Evidence Tags Attached to an Exhibit Containing Crack Cocaine Were Not Admitted in Evidence in Violation of the Hearsay Rule

{¶ 8} Ayers's First Assignment of Error states:

THE TRIAL COURT ERRED IN ALLOWING PURE HEARSAY

EVIDENCE TO PASS TO THE JURY DURING DELIBERATION.

{¶ 9} Ayers contends that the State failed to demonstrate a chain of custody sufficient to establish that the crack cocaine, presented to the jury as State's Exhibit 1, was taken from Harris. He further contends that the trial court abused its discretion by permitting Exhibit 1 to be given to the jury during its deliberations because the exhibit had evidence tags attached to it which he contends contained hearsay evidence.

{¶ 10} "Evid.R. 901 provides that '[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.' A chain of custody is part of the authentication and identification mandate set forth in the rule, and the state has the burden of establishing the chain of custody of a specific piece of evidence before it can be admitted at trial." (Citations omitted). *State v. Rodriguez*, 6th Dist. Wood No. WD-05-026, 2006-Ohio-2121, ¶ 16. "Although the state bears the burden of establishing a proper chain of custody, that duty is not absolute. The state need only establish that it is reasonably certain that substitution, alteration or tampering did not occur. Moreover, breaks in the chain of custody go not to the admissibility of evidence, but to the weight afforded it." *Id.* at ¶ 17. A chain of custody may be established by direct testimony or by inference. *Id.*

{¶ 11} Ayers cites the following passage in support of his argument that the State did not establish a sufficient chain of custody:

PROSECUTOR: For the record, I'm handing the witness what has been marked for identification as State's Exhibit 1. Detective, if you could please identify that item for the ladies and gentlemen of the jury.

DETECTIVE COBERLY: It's a manila envelope that has attached to it a property tag that's in my handwriting. It says it's .09 grams of crack, and it has the Defendant's name on it.

{¶ 12} Ayers argues that although he stipulated that the substance contained within the manila envelope was crack cocaine, he did not stipulate that it was the cocaine taken from Harris. He further argues that the above-cited passage is not sufficient to establish a chain of custody.

{¶ 13} We find this argument unpersuasive. A review of the entire transcript reveals that Coberly's testimony was as follows:

Q: If you could describe for the ladies and gentlemen of the jury what the item in Ms. Harris' hand looked like when you retrieved it.

A: It was a smaller piece of crack. It was off-white in color. And that's about it.

Q: Did you take that crack cocaine into custody?

A: Yes.

Q: And [what] did you do with it once you took it into custody?

A: I put it in the property room, so it could be submitted to the lab for testing.

* * *

Q: For the record For the record, I'm handing the witness what has been marked for identification as State's Exhibit 1. Detective, if you could please identify that item for the ladies and gentlemen of the jury.

A: It's a manila envelope that has attached to it a property tag that's in my handwriting. It says it's .09 grams of crack, and it has the Defendant's name

on it.

Q: Do you recognize the date on which you collected the evidence contained in that envelope? Or did you note that information?

A: It's noted on here.

Q: What date?

A: The 17th of May.

Q: 2012?

A: Yes.

Q: That's your handwriting?

A: Yes.

Q: Is that envelope in the same or at least substantially similar condition as it was on the day you collected it?

A Yes.

Q: If you could please open up the envelope and remove the contents of it.

* * *

Q: What's in the envelope, sir?

A: It's a small piece of plastic and crumbs of crack cocaine.

Q: Do you recognize that crack cocaine?

A: Yes.

Q: Where do you recognize it from?

A: It's similar to the crack cocaine that I took from Ms. Harris.

Q: Is that crack cocaine in the same or substantially similar condition as it

was when you collected it on May 17th, 2012?

A: Yes.

{¶ 14} We conclude that the State did present evidence sufficient to show that the crack cocaine contained in State's Exhibit 1 was the cocaine taken from Harris by Coberly.

{¶ 15} We next address the issue of whether it was improper to submit the property tags attached to Exhibit 1 to the jury. At the close of the State's case, trial counsel objected to the admission of the "additional notes" portion of the evidence tag. Specifically, he objected to the fact that this portion of the evidence tag had a notation that the evidence was properly marked and that it was not "checked for stolen through NCIC" because such a check was not applicable. Counsel contended that this constituted impermissible hearsay evidence.

{¶ 16} A review of the remainder of the property tag shows that, as Coberly testified, he made notes about the date of the incident as well as a description of what he believed the evidence to be. The tags also identify Ayers as the defendant and set forth his address and age. Thus, this evidence was merely cumulative of Coberly's testimony.

{¶ 17} With regard to the "additional notes" portion of the tag, we conclude that its admission was not error. The tag is a record made by Coberly during his confiscation procedure and is merely a piece of administrative paperwork. Even if it were error to permit its admission, we fail to see how Ayers was prejudiced. He had stipulated that the envelope to which the tag was attached contained crack cocaine, and the rest of the information was innocuous.

{¶ 18} We conclude that the trial court did not abuse its discretion by admitting State's Exhibit 1. Accordingly, the First Assignment of Error is overruled.

## IV.   The Trial Court Did Not Err in Overruling Ayers's

## Motion for a Judgment of Acquittal

{¶ 19}   Ayers's Second Assignment of Error is as follows:

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S RULE 29 MOTION.

{¶ 20}   Ayers contends that the State failed to produce evidence sufficient to sustain the conviction, so that the trial court erred by overruling his Crim.R. 29 motion for acquittal. Specifically, he argues that the State failed to establish a proper chain of custody regarding the cocaine, and thus, failed to prove that he had possession thereof.

{¶ 21}   When reviewing the denial of a Crim.R. 29(A) motion, an appellate court applies the same standard it uses in the review of a sufficiency-of-the-evidence claim.   Both claims question "whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law."   *State v. Wilson,* 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).   In reviewing the trial court's denial of a Crim.R. 29(A) motion at the close of the State's case, we consider only the evidence then available to the trial court. *State v. Stoner,* 2d Dist. Clark No.2008 CA 83, 2009-Ohio-2073, ¶ 24. The relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt.   *State v. Dennis,* 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact."   *Id* .

{¶ 22} Ayers was convicted of Possession of Cocaine (less than five grams) in violation of R.C. 2925.11(A). That statute provides, in pertinent part, that "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 23} As elaborated in Part III, above, we conclude that the State did present sufficient evidence of the chain of custody regarding the cocaine once it was taken from Harris. Furthermore, Ayers's Crim.R. 29 motion made at trial did not address the chain of custody; it was based on his contention that the State had failed to demonstrate that Ayers had possessed the crack cocaine.

{¶ 24} The evidence presented at trial consisted of Coberly's testimony that he observed Ayers place his hand in his pocket and then remove it in a cupping fashion. Coberly then observed Ayers place his hand on Harris's hand and Harris take something from Ayers's hand. Coberly then detained Harris and found that she had crack cocaine in her hand. Coberly testified that from the time he observed Ayers with Harris to the time he stopped Harris, she did not have contact with any other person. Coberly further testified that he did not observe Harris do anything with her hand that had taken the item from Ayers, and that she continued to hold the hand in a fist. Harris testified that Ayers had given her the crack cocaine. This evidence, if believed, is sufficient to enable a juror to find the elements of the offense proven beyond a reasonable doubt.

{¶ 25} We conclude that the State presented sufficient evidence to prove, beyond reasonable doubt, that Ayers possessed crack cocaine. Accordingly, the Second Assignment of

Error is overruled.

### V. The Conviction Is Not Against the Manifest Weight of the Evidence

**{¶ 26}** For his Third Assignment of Error, Ayers asserts the following:

APPELLANT'S CONVICTION WAS ENTERED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶ 27}** Ayers again focuses on the issue of chain of custody in support of his claim that his conviction is not supported by the weight of the evidence.

**{¶ 28}** When reviewing a manifest-weight claim, the court "review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Lang,* 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220, quoting *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Because the fact finder has the opportunity to see and hear the witnesses, substantial deference must be extended to its determinations of credibility. *State v. Lawson,* 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). The trier of fact may believe all, some, or none of what a witness says. *State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Carter,* 2d Dist. Montgomery No. 25447, 2013-Ohio-3754, ¶ 10–11.

**{¶ 29}** We conclude that the State presented evidence upon which a rational juror could

find a proper chain of custody. The jury was entitled to credit Harris's testimony that she received the cocaine from Ayers. The jury was also entitled to credit Coberly's testimony regarding the transfer of crack from Ayers to Harris. The jury did not lose its way; this is not the exceptional case in which the evidence weighs heavily against conviction. Accordingly, the Third Assignment of Error is overruled. **VI. Two Improper Statements Made by the Prosecutor, when Considered in their Respective Contexts, Were Not So Prejudicial as to Constitute Plain Error**

{¶ 30} Ayers's Fourth Assignment of Error is as follows:

THE PROSECUTOR COMMITTED REVERSIBLE MISCONDUCT.

{¶ 31} Ayers claims that the prosecutor committed misconduct during both opening statement and closing argument. No objection was interposed to either statement, so that the misconduct must rise to the level of plain error to justify reversal.

{¶ 32} The test for prosecutorial misconduct is whether the remarks were improper, and if so, whether they prejudicially affected the accused's substantial rights. *State v. Jeffery,* 2013-Ohio-504, 986 N.E.2d 1093 (2d Dist.), citing *State v. Smith,* 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). The touchstone of the analysis "is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips,* 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). The question is whether the prosecutor's misconduct so infected the accused's trial with unfairness that the accused's convictions came in violation of the right to due process. *Donnelly v. DeChristoforo,* 416 U.S. 637, 644, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).

{¶ 33} Ayers cites the following statement by the prosecutor during opening statement as objectionable:

And that is why, at the conclusion of this, once you've heard the testimony and seen the evidence, you'll have no choice but to find the Defendant guilty. Thank you.

**{¶ 34}** Ayers contends that this statement by the prosecutor was an instruction that the jury "did not have a choice in the matter [and] that they must side with his view."

**{¶ 35}** A review of the transcript reveals that statement was predicated upon the prosecutor's acknowledgment that the police did not find cocaine on Ayers's person when he was arrested. The prosecutor then explained that his prior possession of the crack cocaine retrieved from Harris could be inferred nevertheless. The prosecutor then ended with this statement:

So focus on what matters, and in this case, it's relatively simple. The drugs that this Defendant had in his pocket and handed to Mandy Harris. That, ladies and gentlemen, is possession, possession of cocaine. No matter how small that rock of crack cocaine is, it is still a violation of the laws of the State of Ohio. And that is why, at the conclusion of this, once you've heard the testimony and seen the evidence, you'll have no choice but to find the Defendant guilty. Thank you.

**{¶ 36}** While the prosecutor would be well-advised to refrain from using the phrase "you'll have no choice but to find the Defendant guilty," we conclude that the impropriety of this statement, in context, did not deprive Ayers of a fair trial. We note that during both preliminary instructions to the jury as well as the final instructions, the trial court stated that Ayers was presumed innocent unless the State proved evidence on every element of the charge. The trial court further stated that Ayers must be acquitted if the State failed to prove its case beyond a

reasonable doubt. We presume that the jury followed the instructions of the court, which also included a statement that opening statements are not evidence.

{¶ 37} Ayers further objects to the following passage from the prosecutor's closing argument:

> If a jury simply cannot rely on someone's testimony, unimpeached testimony, simply because they use drugs, then we ought to turn out those lights, tell the Judge goodbye, and everyone can fend for themselves, because there's no point to this, there's no point to this courtroom, there's no point to this system.

{¶ 38} A complete review of this portion of the argument reveals that the prosecutor, just prior to this statement, had acknowledged the fact that Harris did not exhibit the best character. Immediately following the statement, the prosecutor went on to state that it was up to the jurors to weigh the evidence and not "rush to judgment" because of Harris's background. The prosecutor also stated that the jury did not have to rely solely on Harris's testimony, but could also consider Coberly's corroborating testimony.

{¶ 39} The quoted statement was improper. It told the jury, in effect, that it must not find the testimony of a drug-using witness not credible lest the entire criminal justice system break down as a result. This is an improper inducement to a jury to find a State's witness's testimony credible.[1] Again, however, we are not persuaded that this improper statement, in context, deprived Ayers of a fair trial.

{¶ 40} Ayers's Fourth Assignment of Error is overruled.

---

[1] The statement is also not true. Witnesses in controlled drug transactions are routinely searched before and after the transaction, and are often equipped with body wires, to avoid the problem that the witness, being of questionable character, might not otherwise be believed.

**VII.   Ineffective Assistance of Counsel Is Not Demonstrated on this Record**

**{¶ 41}**   Ayers' Fifth Assignment of Error states:

APPELLANT WAS PREJUDICED BY INEFFECTIVE ASSISTANCE

OF COUNSEL.

**{¶ 42}**   Ayers contends that his trial counsel was ineffective for failing to object to the State's redirect of Coberly, which he contends was beyond the scope of his cross-examination. He also contends that counsel was ineffective for failing to object to the prosecutor's opening statement and closing argument, as noted in Assignment of Error Four in Part VI, above. Finally, he contends that the doctrine of cumulative error requires the reversal of this conviction.

**{¶ 43}**    "In order to prevail on a claim of ineffective assistance of counsel, the defendant must show both deficient performance and resulting prejudice." *State v. Matthews,* 189 Ohio App.3d 446, 2010-Ohio-4153, 938 N.E.2d 1099, ¶ 39 (2d Dist.), citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of effective assistance, and to show deficiency, the defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness."  *Id.,* citing *Strickland* at 690.

**{¶ 44}**   We begin with the claim that counsel failed to object to re-direct examination that was outside the scope of cross-examination.   Redirect examination is a matter committed to the discretion of the trial court.   *State v. Wilson*, 30 Ohio St.2d 199, 204, 283 N.E.2d 632 (1972).

**{¶ 45}**   Ayers claims that counsel should have objected to the prosecutor's questions

regarding the amount of cocaine Ayers was carrying when arrested, the gestures made by Ayers and Harris during the transaction, and what happened to Harris's hand after she took the item from Ayers. He claims that these questions were beyond the scope of cross-examination.

{¶ 46} We agree that during cross-examination, trial counsel did not specifically ask whether Ayers had any cash on his person when he was arrested. However, counsel did inquire whether Ayers was searched incident to the arrest and whether anything illegal was found on his person. On redirect, the prosecutor asked whether Ayers had money, to which Coberly responded that he had $92 in cash. While this may technically be outside the scope of the cross-examination, and thus subject to objection, we fail to see how Ayers was prejudiced. There was no evidence presented that Ayers accepted any money from Harris during the transaction. Counsel may have believed that objecting thereto would have suggested to the jury that there was something sinister represented by the $92 found on Ayers's person. In any event, we conclude that counsel was not ineffective for failing to object thereto.

{¶ 47} With regard to the gestures made by Ayers and Harris during the transaction, we note that during cross-examination trial counsel had questioned Coberly regarding why he believed the two were engaged in a drug transaction. Counsel also discussed the type of movements made by people engaged in drug transactions. During redirect, the prosecutor merely asked Coberly to expand upon that testimony. Thus, we find no basis for an objection.

{¶ 48} Next Ayers contends that counsel should have objected when the prosecutor asked, on redirect, what Harris did with her hand from the time of the transaction until she was stopped by Coberly. We agree that this was not an issue raised during cross-examination. However, Coberly had previously testified that he followed Harris as she split up from Ayers and

that she held the cocaine in the same hand with which he had observed her take the item from Ayers, so that the additional testimony on re-direct examination did not add anything new, and was therefore not prejudicial. We conclude, therefore, that counsel's failure to object did not rise to the level of ineffective assistance of counsel.

{¶ 49}   We next turn to the issue of counsel's failure to object to the remarks made by the prosecutor during opening statement and closing argument.  For the same reasons that we have found these improper remarks, when considered in their respective contexts, not to have risen to the level of plain error, we conclude that counsel's failure to have objected to these remarks were not so likely to have changed the outcome of the trial as to "undermine confidence in the outcome."  *Strickland v. Washington, supra*, 466 U.S. at 694.

{¶ 50}   In coming to this conclusion, we are mindful that the impropriety of each remark is tempered by the context in which it was uttered.  Although the prosecutor's remark during opening statement, when considered in isolation, may be construed as a suggestion that the jury was compelled to find Ayers guilty, the context in which it was uttered was a review of the facts that the State proposed to establish by the evidence, which would lead the jury to conclude that it had no choice but to render a guilty verdict.  Similarly, the prosecutor's remark during closing argument, when considered in isolation, may be construed as a suggestion to the jury that it had to find Harris to be a credible witness despite her questionable character, or the entire criminal justice system would crumble.  But in the context in which that remark was uttered, the prosecutor reminded the jury that it was the jury's job to weigh the evidence, and that there was evidence, in the form of Coberly's testimony, to corroborate Harris's testimony.

{¶ 51}   For purposes of analysis, we have assumed that trial counsel was ineffective for

having failed to object to the prosecutor's two improper remarks. Whether trial counsel fell below an objective standard of conduct is questionable. Improper remarks by a prosecutor, unless they rise to a level justifying a motion for mistrial, are difficult for defense counsel to deal with. The interposition of an objection, even if it is sustained and a limiting instruction is given, suggests to the jury that the prosecutor's remark is seriously wounding, giving it an even greater impact on the jury. And if the objection is overruled, the jury may conclude that the trial court has put its imprimatur on the prosecutor's remark. Defense counsel may often be justified, therefore, in electing not to object to isolated improper remarks.

{¶ 52} Finally, we address Ayers's claim of cumulative error, which he makes in connection with this assignment of error. Ayers contends that the cumulative effect of errors deprived him of a fair trial. "Though a particular error might not constitute prejudicial error by itself, a conviction may be reversed where the cumulative effect of the errors deprives the defendant of a fair trial." *State v. Moore,* 81 Ohio St.3d 22, 41, 689 N.E.2d 1 (1998), citing *State v. DeMarco,* 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987). The only error we have found is in the prosecutor's two improper remarks. Considered together, we conclude that they did not result in depriving Ayers of a fair trial.

## VIII.   Conclusion

{¶ 53} All of Ayers's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . .

DONOVAN, J., concurs.

WELBAUM, J., concurring:

{¶ 54}   I am writing separately to very respectfully express my opinion that the statement at issue in the prosecutor's opening statement did not rise to the level of impropriety.  The prosecutor stated:

> And that is why, at the conclusion of this, once you've heard the testimony and
>
> seen the evidence, you'll have no choice but to find the Defendant guilty.

{¶ 55}   The Defendant contends that this statement by the prosecutor was an instruction "that the jury did not have a choice in the matter [and] they must side with his view."

{¶ 56}   The majority believes the statement was improper, but harmless in this case.  I would go one step farther.  Although the prosecutor's statement is obviously incorrect at face value, it is nonetheless too utterly insignificant and meaningless to ever rise to the level of impropriety in a normal criminal trial.  The statement is more inarticulate than improper.  See *State v. Isaiah Smith, Jr.*, 2d Dist. Montgomery No. 25462, _____Ohio _____, ¶ 27.

. . . . . . . . . . . . .

Copies mailed to:

Mathias H. Heck
Michele D. Phipps
Candi S. Rambo
Hon. Michael W. Krumholtz