**[Cite as *State v. King*, 2021-Ohio-4229.]**

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29137 |
| | : | |
| v. | : | Trial Court Case No. 2020-CR-2807/1 |
| | : | |
| RONICA KING | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 3rd day of December, 2021.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by J. JOSHUA RIZZO, Atty. Reg. No. 0099218, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

DAVID R. MILES, Atty. Reg. No. 0013841, 1160 East Dayton-Yellow Springs Road, Fairborn, Ohio 45324
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Ronica King appeals from her convictions for one count of felonious assault (serious physical harm), in violation of R.C. 2903.11(A)(1), a felony of the second degree, and one count of domestic violence, in violation of R.C. 2919.25(A), a misdemeanor of the first degree.   King filed a timely notice of appeal on May 24, 2021.

{¶ 2} On September 5, 2020, the victim, Kendall Jones, drove himself and King to their place of employment at the Crocs distribution plant in Vandalia, Ohio.   At the time, Jones was King's live-in boyfriend, and the vehicle they shared was registered to King's sister, Ronnae.   During the course of Jones's shift that day, he and King ended their relationship, and his employment was terminated.   Jones left the plant in the vehicle registered to King's sister, traveled to his sister's residence in Dayton, Ohio, and played basketball with his niece, Mikaja Robinson.

{¶ 3} While they were outside his sister's house, Jones asked Robinson to take his phone inside and charge it.   After Robinson went inside, two cars arrived at Jones's sister's residence.   Jones testified that there were two people in the first car and three people in the second car.   Among the individuals who arrived in the two vehicles were Ronica and Ronnae King, their cousin, Donnie Bateman, Shelton Bryant, and a woman identified only as "Ashley."

{¶ 4} King and her sister exited the vehicle, approached Jones, and demanded the key to Ronnae's vehicle.   Jones testified that King attempted to take the key out of his pocket and then grabbed his hair and pulled him to the ground.   At this point, Robinson began recording the assault with her cellphone from inside her residence.   The first video recorded by Robinson depicted Jones falling to the ground with King standing over him.

Robinson testified that she observed King kicking Jones while he was on the ground. The second video recorded by Robinson depicted King holding Jones by his neck up against a beige vehicle while Bateman repeatedly punched Jones in the head. At that point, the King sisters, Bateman, and the other two individuals got back in their vehicles and left the scene. King had been able to retrieve the key to the vehicle registered to her sister; however, they were unable to retrieve the vehicle and left it at Jones's sister's house. Jones testified that at no point during the incident did he strike or attempt to strike Ronica King, her sister, or Bateman.

{¶ 5} Shortly thereafter, Jones's sister, Kenyetta, returned to her residence and found Jones lying in the street. Kenyetta testified that Jones was bleeding from his face and told her that he was having difficulty breathing. Based upon what she observed, Kenyetta called 911.

{¶ 6} Dayton Police Officer Dalton Ishmael testified that he responded to the 911 call. Officer Ishmael observed that Jones was bleeding from his head and mouth and appeared unable to stand. Jones was then transported by ambulance to Miami Valley Hospital, where he was interviewed by Dayton Police Detective Dustin Daugherty. Detective Daugherty also took photographs of Jones's injuries. Among the injuries suffered by Jones were multiple facial wounds, numbness in his right arm, a migraine headache, and a bleeding wound to his shoulder. Jones testified that he had a knot on his head the size of a golf ball. A wound to his forehead required stitches and left a scar. Jones testified that before the assault, he had never had migraine headaches, but subsequent to the incident, he had suffered migraines on a weekly basis for several months.

{¶ 7} Detective Daugherty testified that he interviewed King on September 10, 2020; she initially stated that she only removed the key from Jones's pocket and that she tried to stop Jones and Bateman from fighting. Daugherty testified that he then informed King that the incident had been recorded on video. At that point, King admitted that she had repeatedly punched Jones while he was lying on the ground, and she acknowledged that she had had several rings on her fingers at the time of the assault.

{¶ 8} Ronnae King, testifying on her sister's behalf, stated that Jones was the initial aggressor. Specifically, Ronnae testified that it was only after Jones threatened her that King and Bateman stepped in to protect her. Ronnae also testified that Jones was the aggressor throughout the incident and that she and King were only trying to retrieve the key to the vehicle registered in Ronnae's name. Shelton Bryant also testified on King's behalf. Bryant's testimony was similar to Ronnae's testimony, asserting that Jones had been the aggressor throughout the incident and that he had simply refused to turn over the key to the vehicle. Bryant testified that they were only trying to reason with Jones and that King and Bateman only resorted to violence in order to protect themselves from Jones.

{¶ 9} On September 18, 2020, King was indicted for one count of felonious assault (serious physical harm) and one count of domestic violence. At her arraignment on September 22, 2020, King stood mute, and the trial court entered a plea of not guilty on her behalf.

{¶ 10} King's jury trial lasted two days, from April 20-21, 2021. She was found guilty of the charged offenses. On May 13, 2021, the trial court sentenced King to a term of community control and intensive supervision with a domestic violence specialist for a

period not to exceed five years. The trial court also ordered King to serve 90 days in jail, with 38 days of jail time credit.

{¶ 11} King appeals.

{¶ 12} Because they are interrelated, King's first and second assignments of error will be discussed together as follows:

APPELLANT'S CONVICTIONS FOR FELONIOUS ASSAULT AND DOMESTIC VIOLENCE ARE BASED UPON INSUFFICIENT EVIDENCE.

APPELLANT'S CONVICTIONS FOR FELONIOUS ASSAULT AND DOMESTIC VIOLENCE ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 13} In her first and second assignments, King contends that the State failed to present sufficient evidence at trial to support her convictions for felonious assault and domestic violence, and that her convictions were also against the manifest weight of the evidence.

{¶ 14} "* * * [A] challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence." *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 69. In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* at ¶ 70, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. (Other citations omitted.) "A claim that a jury verdict is against the manifest weight of the evidence involves a different test. 'The court, reviewing the entire record, weighs the evidence and all

reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " (Citations omitted.) *Id*. at ¶ 71.

{¶ 15} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of fact to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997).

{¶ 16} This court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510, *4 (Oct. 24, 1997).

{¶ 17} King was convicted of felonious assault in violation of R.C. 2903.11(A)(1), which provides that "[n]o person shall knowingly * * * cause serious physical harm to another * * *. " The Revised Code defines serious physical harm as "[a]ny physical harm that involves some permanent incapacity, whether partial or total, or that involves some

temporary, substantial incapacity, [a]ny physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement, [or a]ny physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5)(c)-(e).

{¶ 18} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B). "Additionally, a defendant acts knowingly, when, although not intending the result, he or she is nevertheless aware that the result will probably occur." *State v. Anderson*, 10th Dist. Franklin No. 10AP-302, 2010-Ohio-5561, ¶ 13, citing *State v. Edwards*, 83 Ohio App.3d 357, 361, 614 N.E.2d 1123 (10th Dist.1992). Thus, "felonious assault under R.C. 2903.11(A), combined with the definition of 'knowingly' found in R.C. 2901.22(B), does not require that a defendant intend to cause 'serious physical harm,' but that the defendant acts with an awareness that the conduct probably will cause such harm." *Id.*; *State v. Gray*, 2d Dist. Montgomery No. 26139, 2016-Ohio-1419, ¶ 41.

{¶ 19} King was also convicted of domestic violence in violation of R.C. 2919.25(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." It is undisputed that at the time the attack on Jones occurred, he and King were residing together in an apartment.

{¶ 20} The record establishes that after Jones left his employment at the Crocs plant, he traveled to his sister's residence in Dayton in the vehicle registered to King's sister. When his niece was inside the residence but Jones was still outside, two cars

arrived containing a total of five people, including Ronica and Ronnae King. King and her sister exited the vehicle, approached Jones, and demanded the key to the vehicle Jones had driven. According to Jones, King attempted to take the key out of his pocket and then grabbed his hair and pulled him to the ground. Jones's niece recorded the assault with her cellphone from inside her residence on two videos: the first video depicted Jones falling to ground with King standing over him, and the second video depicted King holding Jones by his neck up against a beige vehicle while one of the other individuals, Bateman, repeatedly punched Jones in the head. The niece, Robinson, also testified that she observed King kicking Jones while he was on the ground. The King sisters and the others then got back in their vehicles and left the scene. Jones's sister found him in the street a short time later, bleeding from his face and having difficulty breathing.

{¶ 21} Officer Ishmael testified that he responded to the subsequent 911 call; he observed that Jones was bleeding from his head and mouth and appeared unable to stand. Jones testified at trial about the nature of his injuries, which included multiple facial wounds, numbness in his right arm, a migraine headache, a bleeding wound to his shoulder, and stitches to his forehead that left a scar. The responding police officer testified that Jones had been bleeding form his head and mouth, and photographs taken by the police also documented some of his injuries.

{¶ 22} Finally, King admitted to Detective Daugherty that she had repeatedly punched Jones while he was lying on the ground.

{¶ 23} Construing the evidence presented in a light most favorable to the State, as we must, a rational trier of fact could have reasonably found all of the essential elements of the crimes for which King was found guilty to have been proven beyond a reasonable

doubt. King's convictions for felonious assault (serious physical harm) and domestic violence were therefore supported by legally sufficient evidence.

{¶ 24} Furthermore, having reviewed the record, we find no merit in King's manifest-weight challenge. It is well-settled that evaluating witness credibility is primarily for the trier of fact. *State v. Benton*, 2d Dist. Miami No. 2010-CA-27, 2012-Ohio-4080, 2012 WL 3871416, ¶ 7. Here, the jury quite reasonably credited the extensive testimony provided by the State's witnesses, applied said evidence and all reasonable inferences to the elements of the offenses, and found King guilty. The jury did not lose its way in choosing to believe the eyewitness testimony of Jones and Robinson, who described King's attack on Jones, along with the video evidence of the crime. Additionally, the jury's decision to discount the testimony of Ronnae King and Bryant was clearly within its discretion. Having reviewed the entire record, we cannot find that the evidence weighed heavily against conviction or that a manifest miscarriage of justice occurred.

{¶ 25} King's first and second assignments of error are overruled.

{¶ 26} King's third assignment of error is as follows:

APPELLANT'S CONVICTIONS FOR FELONIOUS ASSAULT AND DOMESTIC VIOLENCE MERGE PURSUANT TO R.C. 2941.25.

{¶ 27} In her final assignment, King argues that her convictions for felonious assault and domestic violence were subject to merger pursuant to R.C. 2941.25.

{¶ 28} Initially, we note that King did not ask the trial court to merge the domestic violence offense with the felonious assault offense. Accordingly, King has waived this allied-offense argument, except for plain error. *See State v. Wilson*, 2d Dist. Clark No. 2018-CA-2, 2020-Ohio-2962, ¶ 119; *see also State v. Rogers*, 143 Ohio St.3d 385, 2015-

Ohio-2459, 38 N.E.3d 860, ¶ 3; *State v. Trigg*, 2d Dist. Montgomery No. 26757, 2016-Ohio-2752, ¶ 12 (allied offense argument is subject to plain error review). King's alleged error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice. *Id.* A trial court's failure to merge allied offenses of similar import is plain error. *E.g., State v. Shoecraft*, 2d Dist. Montgomery No. 27860, 2018-Ohio-3920, ¶ 56. Significantly, the State concedes that the trial court committed plain error when it failed to merge King's convictions for felonious assault and domestic violence in light of our recent holding in *State v. Wilson*, 2d Dist. Clark No. 2018-CA-2, 2020-Ohio-2962.

{¶ 29} R.C. 2941.25, Ohio's allied offense statute, provides that:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 30} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, the Ohio Supreme Court clarified the applicable standard with respect to the R.C. 2941.25 merger determination as follows:

Rather than compare the elements of two offenses to determine

whether they are allied offenses of similar import, the analysis must focus on the defendant's conduct to determine whether one or more convictions may result, because an offense may be committed in a variety of ways and the offenses committed may have different import. No bright-line rule can govern every situation.

As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*Id.* at ¶ 30-31.

{¶ 31} In *State v. Wood*, 2d Dist. Montgomery No. 26134, 2016-Ohio-143, we stated:

[T]he Ohio Supreme Court addressed the allied-offense issue again in *State v. Earley*, [145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266]. There the majority characterized the analysis in its earlier [*State v.*] *Johnson*[, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061] lead opinion as "largely obsolete." *Id.* at ¶ 11. The *Earley* court instead embraced *Ruff*, which, as noted above, considers a defendant's conduct, his animus, and the import or significance of his offenses. Applying *Ruff*,

the *Earley* court concluded that misdemeanor OVI and felony aggravated vehicular assault "are offenses of dissimilar import and significance that are to be punished cumulatively." *Earley* at ¶ 20. For purposes of our analysis here, we note that a defendant bears the burden of establishing entitlement to merger, and we review a trial court's ruling on the issue de novo. *State v. LeGrant*, 2d Dist. Miami No. 2013-CA-44, 2014-Ohio-5803, ¶ 15.

* * *

We reach the same conclusion under the *Ruff* standard, which the Ohio Supreme Court applied in *Earley*. We see nothing in Ruff that alters or undermines the foregoing analysis about [the defendant's] commission of murder and aggravated robbery involving the same conduct committed with the same animus. For the reasons set forth above, we conclude that the two offenses were not committed separately and were not committed with a separate animus or motivation. These findings remain pertinent under *Ruff*, which, as noted above, provides that offenses do not merge if "(1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *Ruff* at ¶ 25 [and] ¶ 30-31.

*Wood* at ¶ 54, quoting *State v. McGail*, 2015-Ohio-5384, 55 N.E.3d 513, ¶ 51, ¶ 60 (2d Dist.).

{¶ 32} Recently, in *State v. Wilson*, 2d Dist. Clark No. 2018-CA-2, 2020-Ohio-2962, we held that the trial court committed plain error when it failed to merge the

defendant's felonious assault and domestic violence convictions as allied offenses of similar import. In *Wilson*, the defendant attacked a woman who was pregnant with his child, held her captive for several days, poured hot grease on her back, and struck her with a metal fence post. *Id.* at ¶ 2-4. Similar to the instant case, the defendant in *Wilson* was convicted of felonious assault and domestic violence, and the trial court sentenced him separately for each offense. Ultimately, we found that the trial court's failure to merge the offense amounted to plain error because "the State did not differentiate between the conduct underlying the felonious assault and the conduct underlying the domestic violence in the indictment, in the bill of particulars, or during the trial." *Id.* at ¶ 127. We further stated as follows:

> The trial court, having presided over Wilson's jury trial, was aware of the factual circumstances giving rise to Wilson's guilty verdicts. The conduct that formed the basis for the felonious assault charge also formed the basis for the domestic violence offense. The offenses were committed over the same period of time (January 27 to January 31) and with the same animus. Under the facts of this case, the trial court's failure to merge the felonious assault and domestic violence offenses constituted plain error.

*Id.* at ¶ 128.

{¶ 33} In the proceedings in King's case, the State likewise did not differentiate between the conduct underlying the felonious assault and the conduct underlying the domestic violence in the indictment or during the trial. This is clearly evidenced by the State's comments in its initial closing argument:

> Now, the first thing to know, the same acts, the same incident, the same

injuries can satisfy both domestic violence and felonious assault. We do not need to show two separate physical altercations. If it's satisfactory for felonious assault, it can be satisfactory for domestic violence.

Tr. 426.

{¶ 34} Accordingly, based upon our holding in *Wilson* as applied to the facts of this case, the trial court's failure to merge the felonious assault and domestic violence offenses constituted plain error.

{¶ 35} King's third assignment of error is sustained.

{¶ 36} The trial court's judgment is affirmed in part, reversed in part, and remanded for resentencing.

. . . . . . . . . . . .

TUCKER, P.J. and EPLEY, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
J. Joshua Rizzo
David R. Miles
Hon. Michael W. Krumholtz