[Cite as *State v. Williams*, 2025-Ohio-1398.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO

    Appellee

v.

DEANGELO R. WILLIAMS

    Appellant

:
:
:
:
:
:
:
:
:
:
:

C.A. No. 30245

Trial Court Case No. 2024CRB000886

(Criminal Appeal from Municipal Court)

. . . . . . . . . . .

O P I N I O N

Rendered on April 18, 2025

. . . . . . . . . . .

ARVIN S. MILLER, Attorney for Appellant

ASHLEY THOMAS, Attorney for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} De'Angelo[1] R. Williams appeals from his convictions in the Dayton Municipal

Court for failure to comply with an order or signal of a police officer and obstructing official

---

[1] Although we are required to title this case using the same spelling as in the trial court, *see* App.R. 3(D), the record reflects that Williams spells his first name as De'Angelo.

business.   He claims that his conviction for failure to comply was based on insufficient evidence and against the manifest weight of the evidence.   He further asserts that the two offenses should have been merged as allied offenses of similar import.   For the following reasons, Williams's conviction for failure to comply with an order or signal of a police officer will be vacated; his conviction for obstructing official business will be affirmed.

## I. Facts and Procedural History

{¶ 2} At 5:08 a.m. on March 31, 2024, Dayton Police Officer Evan Johnston and his partner, Officer Jacob Johns, were responding to a call of a disturbance when they observed a white Cadillac sedan driving toward them with a female riding on its hood. Officer Johns, who was driving, did a U-turn to initiate a traffic stop.   After the sedan had pulled over and parked next to the curb, the officers pulled behind it and activated their overhead lights.   Williams exited the vehicle, looked at the officers, and ran.   Johnston and Johns chased after him, and Williams was apprehended about 15 seconds later. The officers walked him to their cruiser without incident.

{¶ 3} The next day, Williams was charged by complaint with obstructing official business and resisting arrest, both second-degree misdemeanors, and failure to comply with an order or signal of a police officer, a first-degree misdemeanor.

{¶ 4} The court conducted a bench trial on May 31, 2024.   The sole witness was Officer Johnston, and the State presented the cruiser video and Officer Johns's body camera video as exhibits.   After the evidence was presented, the State dismissed the charge of resisting arrest.   The court found Williams guilty of failure to comply and

obstructing official business.

{¶ 5} The trial court proceeded immediately with sentencing. For failure to comply, the court imposed 180 days in jail with credit for three days and 177 days suspended and ordered Williams to pay a $150 fine. It imposed 90 days in jail with credit for three days and 87 days suspended for obstructing official business, plus a suspended $150 fine. Williams was ordered to pay court costs, and his driver's license was suspended for 180 days. The court placed him on basic community control for one year. At Williams's request, the trial court later stayed his sentence pending appeal.

{¶ 6} Williams appeals from his convictions, raising two assignments of error.

## II. Sufficiency and Manifest Weight of the Evidence

{¶ 7} In his first assignment of error, Williams claims that his conviction for failure to comply with an order or signal of a police officer was based on insufficient evidence and against the manifest weight of the evidence.

{¶ 8} In reviewing a challenge to the sufficiency of evidence, we determine whether the evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, citing *Jackson v. Virginia*, 443 U.S. 307 (1979). Our review is not to determine "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997) (Cook, J., concurring).

{¶ 9} In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Wilson*, 2009-Ohio-525, ¶ 12 (2d Dist.), citing *State v. Hufnagle*, 1996 WL 501470 (2d Dist. Sept. 6, 1996). When evaluating whether a conviction was against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). Reversing a conviction under a manifest weight theory "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175. "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence." *State v. Adams*, 2014-Ohio-3432, ¶ 24 (2d Dist.), citing *Wilson* at ¶ 14.

{¶ 10} "Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses." *Id.*, citing *State v. Lawson*, 1997 WL 476684, *4 (2d Dist. Aug. 22, 1997). " '[T]he fact finder is free to believe all, part or none of the testimony of each witness appearing before it.' " *State v. Lewis*, 2024-Ohio-756, ¶ 12 (2d Dist.), quoting *State v. Petty*, 2012-Ohio-2989, ¶ 38 (10th Dist.). (Other citation omitted.) " '[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight

of the evidence simply because the trier of fact believed the prosecution testimony.' " *State v. Sutherland*, 2022-Ohio-3079, ¶ 47 (2d Dist.), quoting *In re M.J.C.*, 2015-Ohio-820, ¶ 35 (12th Dist.). Therefore, " '[m]ere disagreement over the credibility of witnesses is not [a] sufficient reason to reverse a judgment.' " *Lewis* at ¶ 12, quoting *Petty* at ¶ 38. "This court will not substitute its judgment for that of the trier of fac[t] on the issue of witness credibility unless it is patently apparent that the factfinder lost its way." *State v. Bradley*, 1997 WL 691510, *4 (2d Dist. Oct. 24, 1997).

{¶ 11} Williams was charged with violating R.C. 2921.331(A), which states: "No person shall fail to comply with any lawful order or direction of any police officer invested with authority to direct, control, or regulate traffic." We have held that "the 'lawful order' of a police officer that R.C. 2921.331(A) contemplates, and with which an offender fails to comply in order for a violation to occur, is one that involves the offender's act or omission in *operating* a motor vehicle which, by law, an officer is charged with authority to direct, control, or regulate." (Emphasis added.) *State v. Redd*, 2004-Ohio-4689, ¶ 19 (2d Dist.); *State v. Armstrong-Carter*, 2021-Ohio-1110, ¶ 40 (2d Dist.).

{¶ 12} Historically, the Ohio Supreme Court employed a broad definition of the word "operate." Addressing that term for purposes of an operating under the influence offense, the supreme court formerly held that "operating" and "driving" were not synonymous. *State v. Cleary*, 22 Ohio St.3d 198, 199 (1986) (superseded by statute). Rather, "operating" encompassed a broader category of actions beyond driving, and it concluded that "a person in the driver's position in the front seat with the ignition key in his possession indicating either his actual or potential movement of the vehicle while

under the influence of alcohol or any drug of abuse can be found in violation of R.C. 4511.19(A)(1)." *Id.* The court later extended *Cleary* to include situations where a person was found intoxicated in the driver's seat of a parked vehicle with the ignition key in the ignition. *State v. Gill*, 70 Ohio St.3d 150 (1994).

{¶ 13} *Cleary* and *Gill* have been superseded by statute. For purposes of R.C. R.C. Chapters 4511 and 4513, "operate" now means "to cause or have caused *movement* of a vehicle, streetcar, or trackless trolley." (Emphasis added.) R.C. 4511.01(HHH). In other contexts, the Ohio Supreme Court has noted that the *Cleary* definition of operate could not "be taken as a license for expanding the meaning of operation of a motor vehicle . . . to include anything a driver may do while driving, however unrelated the activity is to moving the car." *Doe v. Marlington Local School Dist. Bd. of Edn.*, 2009-Ohio-1360, ¶ 22 (addressing political subdivision liability under R.C. 2744.02(B)(1)). More recently, the Court has concluded that "the plain-language definition of 'operating' a vehicle (the purpose of which is transportation) involves movement." *State v. Wilson*, 2022-Ohio-3202, ¶ 17. It explained that this was consistent with the Ohio legislature's choice, since *Cleary* and *Gill*, to distinguish between operation and mere physical control of a vehicle. *Id.*, comparing R.C. 4511.19 with R.C. 4511.194.

{¶ 14} In its appellate brief, the State asserts that Officers Johnston and Johns were justified in conducting a traffic stop based on their observation of Williams's driving a vehicle with a female seated on the hood of the car, and that they lawfully initiated a traffic stop by pulling behind the Cadillac and turning on their overhead lights. The State further argues that it was irrelevant that Williams had voluntarily pulled over and parked

before the officers activated the overhead lights. Rather, once the overhead lights were activated, the officers had signaled a directive to stop and Williams was obligated to remain at the scene for the duration of the traffic stop.

{¶ 15} The State's evidence established that Officers Johnston and Johns observed Williams driving with a female seated on the hood of the vehicle. Police officers may briefly stop and temporarily detain individuals to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity has occurred, is occurring, or is about to occur. *Terry v. Ohio*, 392 U.S. 1 (1968); *State v. Mays*, 2008-Ohio-4539, ¶ 7-8; *State v. Laster*, 2018-Ohio-3601, ¶ 49 (2d Dist.). Reasonable suspicion of any criminal offense, even a minor traffic-related offense, is sufficient to justify an investigatory detention. *See, e.g., State v. Hale*, 2024-Ohio-4866, ¶ 19 (traffic stops are a form of an investigatory detention); *Mays* at ¶ 8 (a stop based on reasonable suspicion of a traffic violation is constitutionally valid). We agree with the State that the officers' observation of a female on the hood of a moving vehicle justified an investigatory stop of the vehicle.

{¶ 16} Officer Johnston testified that when officers turn on their overhead lights, individuals "are supposed to pull over their car and wait in their vehicle for us to approach." Trial Tr. 11-12. Officer Johnston testified, however, and the cruiser video confirmed, that Williams had already pulled over to the curb prior to the activation of the cruiser's overhead lights. Consequently, the activation of the overhead lights was an order directing Williams to remain at the scene so that the officers could talk with him. By exiting the vehicle and fleeing from the scene on foot, Williams did not violate any order

related to his *operation* of the vehicle. He did not drive away or otherwise maneuver the vehicle in a manner inconsistent with the officers' directive. Rather, his actions violated the implicit order that he stay with the vehicle for the duration of the officers' investigation. While such conduct may violate another statute, it was insufficient to constitute failure to comply with an order or signal of a police officer in violation of R.C. 2921.331(A).

{¶ 17} Williams's first assignment of error is sustained.

### III. Allied Offenses of Similar Import

{¶ 18} In his second assignment of error, Williams claims that the trial court erred in failing to find that charges of obstructing official business and failure to comply were allied offenses of similar import. Based on our disposition of Williams's first assignment of error, his second assignment of error is overruled as moot. *See* App.R. 12(A)(1)(c).

### IV. Conclusion

{¶ 19} Having sustained the first assignment of error, we will vacate Williams's conviction for failure to comply with an order or signal of a police officer. His conviction for obstructing official business will be affirmed.

. . . . . . . . . . . .

TUCKER, J. and HUFFMAN, J., concur.