**[Cite as *State v. Hayes*, 2025-Ohio-4603.]**

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 2024-CA-71 |
| Appellee | : | |
| | : | Trial Court Case No. 2023 CR 0454 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| MICHAEL D. HAYES | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on October 3, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
ROBERT G. HANSEMAN, JUDGE

LEWIS, J., and HUFFMAN, J., concur.

**OPINION**
GREENE C.A. No. 2024-CA-71

LUCAS W. WILDER, Attorney for Appellant
MEGAN A. HAMMOND, Attorney for Appellee

HANSEMAN, J.

{¶ 1} Appellant Michael D. Hayes appeals from his convictions in the Greene County Court of Common Pleas of possession of cocaine and aggravated possession of drugs following his trial by a jury. In support of his appeal, Hayes claims that his speedy-trial rights were violated and that the trial court erred by overruling his motion to suppress evidence. Hayes also challenges the mandatory nature of his prison sentence for possession of cocaine and the trial court's failure to merge his convictions as allied offenses of similar import. Lastly, Hayes claims that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. For the reasons outlined below, we find that Hayes's arguments lack merit and affirm the judgment of the trial court.

**Facts and Course of Proceedings**

{¶ 2} On August 21, 2023, a Greene County grand jury returned an indictment charging Hayes with trafficking cocaine, a second-degree felony, possession of cocaine, a third-degree felony, and aggravated possession of drugs (methamphetamine), a fifth-degree felony. The charges resulted from police officers recovering bags of cocaine and methamphetamine from Hayes's person during a traffic stop, which was conducted as a part of a targeted drug investigation by the Greene County A.C.E. Task Force. Hayes pled not guilty to the indicted charges, and the matter was scheduled for a jury trial.

{¶ 3} On October 5, 2023, Hayes filed a time waiver that waived his speedy-trial rights. Thereafter, on October 23, 2023, Hayes filed a motion to suppress the drug evidence found on his person and the statements he made to police officers during the traffic stop. In support of his motion to suppress, Hayes alleged that his Fourth Amendment protection against unreasonable searches and seizures had been violated because the police officers unlawfully prolonged the traffic stop and conducted impermissible searches of his person and vehicle. Hayes also alleged that the officers unlawfully questioned him in violation of his *Miranda* rights. After multiple continuances, on February 16, 2024, the trial court held a hearing on Hayes's motion to suppress. Approximately six months later, on August 7, 2024, the trial court issued its decision overruling the motion.

{¶ 4} On June 25, 2024, while the trial court's suppression decision was pending, Hayes filed a written revocation of his speedy-trial time waiver. Following the trial court's denial of Hayes's motion to suppress, on August 21, 2024, Hayes moved to dismiss his case on speedy-trial grounds. Finding neither a constitutional nor a statutory speedy-trial violation, the trial court overruled Hayes's motion to dismiss on September 11, 2024. Hayes's case then proceeded to a jury trial on September 16, 2024.

{¶ 5} At Hayes's trial, the State presented testimony from Detectives Connor Mulcahy and Jacob Osburn of the Greene County A.C.E. Task Force ("the task force"). Mulcahy testified that in August 2023, he was a patrol officer with the Fairborn Police Department who assisted the task force with "drug saturations" in the city of Fairborn. Mulcahy explained that during drug saturations, the task force selects cities in Greene County for heavy police enforcement to remove as many drugs and guns from the street as possible. Undercover detectives watch targeted houses and people in the chosen cities and have marked police units assist them with conducting traffic stops and arrests.

{¶ 6} Mulcahy testified that on August 9, 2023, he was in a marked police cruiser assisting the task force with a drug saturation in which Hayes was one of the targets. Mulcahy testified that an undercover detective had contacted him and told him that he had observed Hayes enter his vehicle and commit a turn signal violation while leaving an apartment complex in Fairborn. Osburn confirmed that he was the undercover detective who observed the turn signal violation and relayed the observation to Mulcahy.

{¶ 7} Mulcahy was in his police cruiser just down the street from where Osburn had observed Hayes commit the turn signal violation. After being contacted by Osburn, Mulcahy followed Hayes in his police cruiser and saw Hayes commit another turn signal violation. Mulcahy also observed a window tint violation based due to the dark windows of Hayes's vehicle. Based on these traffic and equipment violations, Mulcahy activated his police cruiser's overhead lights to conduct a traffic stop. Hayes initially slowed his vehicle but started to drive again. Mulcahy turned on his sirens and Hayes eventually stopped. According to Mulcahy, Hayes's delay in stopping was not egregious.

{¶ 8} Mulcahy was equipped with a cruiser camera and a body camera, and the State presented video footage from those cameras as evidence at trial. *See* State's Ex. 5.1, 5.2, and 5.3. The video evidence showed that when Hayes pulled his vehicle over to the side of the road, Mulcahy immediately asked Hayes to place his hands outside the window of his vehicle and Hayes complied. Mulcahy approached Hayes and had him exit the vehicle. As Hayes exited, Mulcahy explained that Hayes had made a wide turn and failed to use his turn signal. Mulcahy then patted Hayes down for officer safety while two other officers stood by. No contraband was discovered during the pat down.

{¶ 9} Following the pat down, Mulcahy asked Hayes if there was anything illegal in his vehicle. Hayes responded in the negative. Mulcahy then said: "So we can search it?"

And Hayes responded: "Yeah." State's Ex. 5.2. Thereafter, Mulcahy had Hayes sit on the curb. As he went to the curb, Hayes coughed and stated that he was "really sick" and that he had been "going to get some medicine." *Id*. Hayes sat on the curb and continued to tell Mulcahy that he did not feel well and that he had been sick for a couple of days. Mulcahy had an officer stand by and watch Hayes while he and a third officer searched Hayes's vehicle.

{¶ 10} The State did not present the portion of the video footage showing the search of Hayes's vehicle; Mulcahy testified that no contraband was discovered during the search. Mulcahy explained that Hayes had requested a medic, and the encounter with Hayes would have ended after the fruitless vehicle search had Hayes not made that request.

{¶ 11} The video evidence showed that an ambulance arrived at the scene shortly after the officers finished searching Hayes's vehicle. When the ambulance arrived, Mulcahy helped Hayes up off the curb and asked: "Is it okay if I do a search on you before we put you up to the medic?" State's Ex. 5.2 and 5.3. Hayes responded: "You just did." Mulcahy then said: "Nah, I just pat you down. Is it ok if I search you?" *Id*. Immediately thereafter, Hayes placed both of his hands into the pockets of his shorts and pulled out a clear plastic bag and some tissues. Mulcahy's testimony and the video evidence revealed that the clear plastic bag contained a white crystalline substance, which Mulcahy believed was methamphetamine.

{¶ 12} After observing the bag of suspected methamphetamine, Mulcahy took the bag from Hayes's hand and searched Hayes's person. During the search, Mulcahy checked the inside of Hayes's pockets and swept his hands against the inside of Hayes's legs over his shorts. There, Mulcahy felt an object under Hayes's groin. After feeling the object,

Mulcahy handcuffed Hayes and advised Hayes of his *Miranda* rights. Hayes indicated that he understood his *Miranda* rights, and Mulcahy started to question Hayes.

{¶ 13} Mulcahy asked Hayes what was in his underwear, and Hayes said that he did not know. Mulcahy reached up underneath Hayes's shorts from the bottom and shook the shorts until two plastic bags containing a white powdered substance fell out. Upon seeing the bags, Mulcahy asked Hayes: "Is that crack?" Hayes responded: "Yeah." Mulcahy then asked: "Is the other stuff meth?" Hayes replied: "Yeah, I smoke it." State's Ex. 5.2. Mulcahy questioned whether Hayes had smoked crack and meth that day, and Hayes responded affirmatively.

{¶ 14} Suzanne Elliott, a forensic scientist from the Hamilton County Crime Lab, testified at trial and identified the substances found on Hayes's person. Elliott tested the suspected illegal drugs and prepared a report with her findings. Her report and testimony established that the substance in the bag from Hayes's pocket was methamphetamine and that the contents of the two bags found in Hayes's underwear contained cocaine.

{¶ 15} After the State rested its case, Hayes moved for acquittal of all charges under Crim.R. 29. The trial court granted Hayes's motion as to the charge for trafficking cocaine but overruled it in relation to possession of cocaine and aggravated possession of drugs. Hayes did not present any testimony in his defense. The jury found Hayes guilty of both possession charges.

{¶ 16} On November 7, 2024, the matter proceeded to a sentencing hearing. During the hearing, the trial court found that based on Hayes's two prior felony drug convictions, his third-degree felony possession of cocaine offense carried a mandatory prison term. Hayes did not deny that he had been previously convicted of two felony drug offenses; instead, he argued that his sentence should not be mandatory under the applicable statute because his

prior drug offenses arose from the same case. The trial court disagreed and sentenced Hayes to a mandatory term of 24 months in prison for possession of cocaine and 12 months in prison for aggravated possession of drugs. The trial court ordered those terms to be served consecutively for a total sentence of 36 months in prison.

{¶ 17} Hayes now appeals from his convictions, raising five assignments of error for review.

**First Assignment of Error**

{¶ 18} Under his first assignment of error, Hayes contends that his speedy-trial rights were violated and that the trial court erred by failing to dismiss his case on those grounds. Although not explicit, the arguments in Hayes's brief suggest that he is claiming both a constitutional and a statutory speedy-trial violation.

*Standard of Review*

{¶ 19} "Review of a speedy-trial claim involves a mixed question of law and fact. Therefore, we defer to the trial court's factual findings if they are supported by competent, credible evidence, but we review the application of the law to those facts de novo." (Citation omitted.) *State v. Long*, 2020-Ohio-5363, ¶ 15; *accord State v. Knott*, 2024-Ohio-2289, ¶ 15 (2d Dist.). "De novo review requires an 'independent review of the trial court's decision without any deference to the trial court's determination.'" *State v. Clay*, 2016-Ohio-424, ¶ 5 (2d Dist.), quoting *Jackson v. Internatl. Fiber*, 2006-Ohio-5799, ¶ 17 (2d Dist.).

*Statutory and Constitutional Speedy-Trial Rights*

{¶ 20} "'The Sixth and Fourteenth Amendments to the United States Constitution guarantee a criminal defendant the right to a speedy trial by the state. This same right is

assured an accused party by Section 10, Article 1 of the Ohio Constitution.'" (Citation omitted.) *State v. O'Brien*, 34 Ohio St.3d 7, 8 (1987), quoting *State v. Ladd*, 56 Ohio St.2d 197, 200 (1978). The constitutional right to a speedy trial is also statutorily enforced in Ohio by the provisions of R.C. 2945.71 et seq. *State v. Adams*, 43 Ohio St.3d 67, 68 (1989). "Thus, for purposes of bringing an accused to trial, the statutory speedy trial provisions of R.C. 2945.71 et seq. and the constitutional guarantees found in the United States and Ohio Constitutions are coextensive." (Emphasis deleted.) *O'Brien* at 9.

{¶ 21} "[A]lthough the statutory and constitutional speedy trial provisions are coextensive, the constitutional guarantees may be found to be broader than speedy trial statutes in some circumstances." *Id*. The Supreme Court of Ohio has recognized that "'there may be situations wherein the statutes do not adequately afford the protection guaranteed by the federal and state constitutions, in which case it is our duty to see that an accused receives the protection of the higher authority[.]'" *Id*., quoting *Ladd* at 201. "'[B]ecause constitutional speedy trial guarantees may be found to be broader than speedy trial statutes,' a constitutional right to a speedy trial must be analyzed separately from a statutory speedy trial right." *State v. Frazier*, 2023-Ohio-4222, ¶ 6 (9th Dist.), quoting *State v. Williams*, 1994 WL 135309, *2 (9th Dist. Apr. 20, 1994); *accord State v. Sweeney*, 2024-Ohio-3425, ¶ 20 (2d Dist.).

*Statutory Speedy-Trial Law and Speedy-Trial Waiver*

{¶ 22} Under Ohio's statutory scheme, a person charged with a felony offense "shall be brought to trial within two hundred seventy days after the person's arrest." R.C. 2945.71(C)(2). "A defendant establishes a prima facie speedy trial violation when his motion [to dismiss] reveals that a trial did not occur within the time period prescribed by

R.C. 2945.71." *State v. Hill*, 2020-Ohio-2958, ¶ 6 (2d Dist.), citing *State v. Butcher*, 27 Ohio St.3d 28, 31 (1986). It is well established that the 270-day time limit for bringing a defendant to trial can be extended or tolled for any of the reasons listed under R.C. 2945.72(A) through (J).

{¶ 23} It is also well established that "[a] criminal defendant may waive speedy trial rights." (Citations omitted.) *State v. Ramey*, 2012-Ohio-2904, ¶ 18. "Speedy-trial waivers are distinct from the provisions in R.C. 2945.72 that extend the statutory speedy-trial time by tolling it." *State v. Kerby*, 2005-Ohio-3734, ¶ 62 (2d Dist.); *accord State v. Harris*, 2023-Ohio-648, ¶ 16 (2d Dist.). "A waiver relinquishes the right, at least until the waiver is withdrawn. Tolling doesn't waive the speedy-trial right, however." *Kerby* at ¶ 62.

{¶ 24} "Following an express, written waiver of unlimited duration by an accused of his right to a speedy trial, the accused is not entitled to a discharge for delay in bringing him to trial unless the accused files a formal written objection and demand for trial, *following which the state must bring the accused to trial within a reasonable time*." (Emphasis added.) *O'Brien*, 34 Ohio St.3d at paragraph two of the syllabus. "If a defendant revokes a speedy trial waiver of unlimited duration, the speedy trial requirements found in R.C. 2945.71 no longer apply." (Citations omitted.) *Harris* at ¶ 17. "Rather, following revocation of the waiver, a defendant must be tried within a reasonable time." *Id*. "In reviewing whether the time was reasonable, we consider whether the defendant's constitutional speedy trial rights have been violated." *Id*.

*Constitutional Speedy-Trial Law*

{¶ 25} Courts apply a four-factor balancing test when determining whether there is a constitutional speedy-trial violation. *Barker v. Wingo*, 407 U.S. 514, 530-533 (1972). "The

factors include: (1) the length of the delay 'between accusation and trial'; (2) the reason for the delay; (3) the defendant's assertion, if any, of his right to a speedy trial; and (4) the prejudice, if any, to the defendant." (Citations omitted.) *State v. Wagner*, 2021-Ohio-1671, ¶ 14 (2d Dist.)

**{¶ 26}** "None of the factors is controlling because a 'balancing test necessarily compels' a court to evaluate an alleged speedy trial violation 'on an ad hoc basis,' meaning that the court must consider the totality of the circumstances." *Id*. at ¶ 15, quoting *Barker* at 530. "However, . . . the length of the delay is a particularly important factor as it 'is to some extent a triggering mechanism.'" *State v. Lee*, 2024-Ohio-1802, ¶ 9 (2d Dist.), quoting *Barker* at 530. This is because "'[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.'" *Id*., quoting *Barker* at 530. "The length of delay becomes presumptively prejudicial as it approaches one year in length." *Id*., citing *Doggett v. United States*, 505 U.S. 647, 652, fn. 1 (1992); *accord State v. Adams*, 2015-Ohio-3954, ¶ 90.

**{¶ 27}** When reviewing the second *Barker* factor—the reason for the delay in bringing the defendant to trial—"[o]nly the portion of the delay which is attributed to the government's neglect is to be weighed in a defendant's favor." *State v. Triplett*, 78 Ohio St.3d 566, 569 (1997), citing *Doggett* at 658. "Deliberate dilatory acts are weighted heavily against the state, while negligent acts are weighted less heavily against the state." *State v. Duncan*, 2021-Ohio-3229, ¶ 16 (1st Dist.), citing *Barker* at 531. "[I]ntertwined within this *Barker* analysis is whether the defendant shares any responsibility for the delay." *State v. Rentas*, 2022-Ohio-2412, ¶ 32 (8th Dist.), citing *Triplett* at 570.

**{¶ 28}** With regard to the third *Barker* factor—whether the defendant asserted his right to a speedy trial—we note that "'[i]t is well established under our law that the right to a

speedy trial conferred by the Constitution is not self-executing.'" *State v. Perkins*, 2009-Ohio-3033, ¶ 12 (2d Dist.), quoting *Partsch v. Haskins*, 175 Ohio St. 139, 140 (1963). "'Affirmative action on the part of an accused in the nature of a demand to be tried is necessary to invoke the protection of the Constitution. . . . In other words, there can be no denial where there has been no demand.'" *Id*.

{¶ 29} Finally, the fourth *Barker* factor—whether the defendant was prejudiced by the delay—"should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Barker,* 407 U.S. at 532. These interests are: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id*. The third interest is "the most serious . . . because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id*.

*Analysis*

{¶ 30} In this case, after 58 days of speedy-trial time had elapsed, on October 5, 2023, Hayes filed an express written waiver of his speedy-trial rights for an unlimited duration. Hayes then revoked the waiver on June 25, 2024. The speedy-trial requirements of R.C. 2945.71 et seq. no longer apply following a defendant's revocation of a speedy-trial waiver. *Harris,* 2023-Ohio-648, at ¶ 17 (2d Dist.). Because Hayes waived his speedy-trial rights and then revoked the waiver, this court's review is limited to whether Hayes was tried within a reasonable time. This question implicates analysis under the constitutional speedy-trial standard. *Id*. Accordingly, we must apply the four-factor balancing test of *Barker* to determine whether there is a constitutional speedy-trial violation.

{¶ 31} With regard to the first *Barker* factor—the length of the delay—we find that Hayes was tried 380 days after his arrest, which is just over a year. "The length of delay becomes presumptively prejudicial as it approaches one year in length." *Lee*, 2024-Ohio-1802 at ¶ 9 (2d Dist.), citing *Doggett* 505 U.S. at 652, fn. 1; *accord Adams*, 2015-Ohio-3954 at ¶ 90. Therefore, because the delay in this case was just over a year, it is deemed presumptively prejudicial and triggers a review of the three other *Barker* factors.

{¶ 32} The second *Barker* factor—the reason for the delay in bringing Hayes to trial—weighs against Hayes because the delay was primarily attributable to Hayes's own actions. For example, trial was delayed by Hayes violating his bond twice and by various motions he filed, including a motion to suppress, a motion for release of vehicle, a pro se motion to be released from custody, two motions to modify bond, and a motion to dismiss on speedy-trial grounds.

{¶ 33} We note that Hayes's motion to suppress caused the longest delay. The trial court ruled on the motion 300 days after it was filed. Hayes argues that the 300-day delay in the trial court's ruling was unreasonable. In support, Hayes points to Sup.R. 40(A)(3), which states that "[a]ll motions shall be ruled upon within one hundred twenty days from the date the motion was filed[.]" This court, however, does "not view that rule of superintendence as providing for a per se rule of reasonableness with respect to the disposition of motions[.]" *State v. Divine*, 1995 WL 703896, *3 (2d Dist. Nov. 29, 1995). "[I]t is generally held amongst the Ohio Appellate Court[s] that the Rules of Superintendence are general guidelines for courts' conduct that do not create substantive rights in individuals or procedural law." *In re C.H.*, 2015-Ohio-2109, ¶ 51 (7th Dist.), citing *In re K.G.*, 2010-Ohio-4399, ¶ 11 (9th Dist.).

{¶ 34} The Supreme Court of Ohio has also explained:

Other factors may dictate that a trial court take more time to rule on a motion. For example, a judge may require longer than 120 days to rule on a motion for summary judgment in a complex case. Other factors that might delay a ruling are the need for further discovery, the possibility of settlement, and other motions pending in the case.

*State ex rel. Culgan v. Collier*, 2013-Ohio-1762, ¶ 12.

**{¶ 35}** It follows that "[t]here is no bright line rule with respect to what constitutes a reasonable amount of time to render a decision on a motion to suppress. Rather, a reviewing court must carefully examine the record and consider the particular '"facts and circumstances of each case."'" *State v. Boyd*, 2023-Ohio-2079, ¶ 21 (2d Dist.), quoting *State v. Taylor*, 1995 WL 680052, *12 (2d Dist. Nov. 17, 1995), quoting *State v. McDaniel*, 1995 WL 75394, *3 (4th Dist. Feb. 21, 1995). "The complexity of the facts and the difficulty of the legal issues, in addition to the constraints of a trial judge's docket, must be considered." *Id*. Therefore, "[t]he amount of time taken to render a decision on a defendant's motion to suppress must be reasonable in light of all the circumstances." *Id*., citing *Taylor* at *12.

**{¶ 36}** Under the circumstances of this case, we find that the delay in ruling on Hayes's motion to suppress was reasonable. The motion to suppress was complex in that it raised multiple issues concerning search and seizure and *Miranda*. Additionally, while the suppression ruling was pending, Hayes filed several motions and violated his bond, necessitating a bond hearing. Specifically, Hayes filed a motion for release of vehicle that the trial court overruled on May 9, 2024. Hayes then filed a pro se motion to be released from custody, which the trial court overruled on May 23, 2024. Hayes next filed a motion to modify his bond on May 23, 2024, which the trial court overruled on June 7. Hayes followed with a second motion to modify his bond on June 25, 2024, and requested a hearing on the

motion. The trial court overruled the second bond motion on July 10, 2024. After ruling on all these matters, the trial court issued its decision overruling Hayes's motion to suppress on August 7, 2024.

{¶ 37} These filings and Hayes's bond violation undoubtedly delayed the trial court's ruling on his motion to suppress. We do recognize that an approximately two-and-a-half-month portion of the delay was attributable to the State requesting two continuances of the suppression hearing for the purpose of securing a material witness. The State also requested a four-day extension of time to respond to Hayes's post-suppression hearing brief. But because nothing in the record indicates that these requests and extensions were deliberate, dilatory acts, the associated delays do not weigh heavily against the State.

{¶ 38} Because Barker's own conduct and filings were the primary cause of the delay in his trial, we find that the second *Barker* factor weighs against finding a constitutional speedy-trial violation. In contrast, the third *Barker* factor—whether the Hayes asserted his right to a speedy trial—weighs in favor of finding a constitutional speedy-trial violation because Hayes asserted his right to a speedy trial by filing his motion to dismiss on August 21, 2024.

{¶ 39} The fourth *Barker* factor—whether Hayes was prejudiced by the delay in bringing him to trial—does not weigh in favor of finding a constitutional speedy-trial violation. We find no prejudice because the delay did not subject Hayes to "oppressive pretrial incarceration." Hayes was not in custody during the entire 380-day delay at issue. Instead, Hayes was in custody for approximately half of that time due to Hayes violating his bond on two occasions. Had Hayes not violated his bond, he would have been in custody for only six days. *See United States v. Lovelace*, 2019 WL 2447066, *3 (M.D.Fla. June 12, 2019) (finding "no oppressive pre-trial incarceration because Defendant Lovelace violated his bond

and continued his criminal activity"). We also fail to see how Hayes's defense was impaired by the delay. Hayes did not claim that any witnesses or evidence were made unavailable because of the delay. If anything, the delay gave his defense counsel more time to prepare for trial. Accordingly, we find that the prejudice factor weighs against finding a constitutional speedy-trial violation.

{¶ 40} Because the delay in bringing Hayes to trial was primarily attributable to his own conduct and filings and he was not prejudiced by the delay, which was just over a year, we find that under the totality of the circumstances, his constitutional right to a speedy trial was not violated.

{¶ 41} Hayes's first assignment of error is overruled.

**Second Assignment of Error**

{¶ 42} Hayes's second assignment of error claims that the trial court erred by failing to suppress the drug evidence found on his person and the statements he made to police officers during the traffic stop. Hayes concedes that he was lawfully stopped for a traffic violation and that Detective Mulcahy was permitted to pat him down for officer safety. Nevertheless, Hayes argues that his Fourth Amendment protection against unreasonable searches and seizures was violated due to the officers unlawfully prolonging the traffic stop. He claims that once the pat down for weapons was completed, the officers had no reason to search his vehicle or his person and that the searches were not consensual. According to Hayes, the evidence obtained from the search of his person was unlawfully obtained and should have been suppressed. Hayes adds that after the drugs were found, the officers unlawfully questioned him in violation of his *Miranda* rights, so the statements he gave in response to those questions should have been excluded by the trial court.

*Standard of Review*

**{¶ 43}** "'Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.'" *State v. Koon*, 2015-Ohio-1326, ¶ 13 (2d Dist.), quoting *State v. Burnside*, 2003-Ohio-5372, ¶ 8. "'Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.'" *Id*. "The application of the law to the trial court's findings of fact is subject to a de novo standard of review." (Citations omitted.) *State v. Turner*, 2015-Ohio-4612, ¶ 10 (2d Dist.).

*Failure to File a Transcript*

**{¶ 44}** Hayes filed a pretrial motion to suppress asserting the arguments discussed above, but he failed to provide this court with a transcript of the February 16, 2024 suppression hearing. "'The duty to provide a transcript for appellate review falls upon the appellant. . . An appellant bears the burden of showing prejudicial error by reference to matters in the record.'" *State v. Thomas*, 2007-Ohio-1344, ¶ 11 (2d Dist.), quoting *Shirley v. Kruse*, 2007-Ohio-193, ¶ 22 (2d Dist.). "'When portions of the transcript necessary for resolution of assigned errors are omitted from the record, we have nothing to pass upon and, thus, we have no choice but to presume the validity of the lower court's proceedings and affirm.'" *Id*. We have also held that "[a]bsent a transcript of the hearing, we are constrained to presume the regularity of the proceedings below unless the limited record for

our review affirmatively demonstrates error." *State v. Like*, 2008-Ohio-1873, ¶ 33 (2d Dist.), citing *Banks v. Regan*, 2008-Ohio-188, ¶ 2 (2d Dist.).

{¶ 45} In this case, by failing to file a transcript of the suppression hearing, Hayes has not provided this court with a proper record upon which to consider affording him appellate relief. As a consequence, we must presume the regularity of that proceeding and find that there was evidence presented at the hearing to justify the trial court's decision to overrule Hayes's motion to suppress. Moreover, the record available for our review, i.e., the video evidence and the testimony presented at trial, does not affirmatively demonstrate any error in the trial court's suppression decision.

*Suppression Law and Analysis*

{¶ 46} "The Fourth Amendment to the United States Constitution, and Section 14, Article I of the Ohio Constitution, protect individuals from unreasonable searches and seizures conducted by police officers." (Citations omitted.) *State v. Ferguson*, 2020-Ohio-4153, ¶ 12 (2d Dist.).

> For a search or seizure to be reasonable under the Fourth Amendment, it must be based upon probable cause and executed pursuant to a warrant. This requires a two-step analysis. First, there must be probable cause. If probable cause exists, then a search warrant must be obtained unless an exception to the warrant requirement applies. If the state fails to satisfy either step, the evidence seized in the unreasonable search must be suppressed.

(Citations omitted.) *State v. Moore*, 90 Ohio St.3d 47, 49 (2000).

{¶ 47} "Consent is an exception to the warrant requirement, and requires the State to show by clear and positive evidence that the consent was freely and voluntarily given." *State v. George*, 2014-Ohio-4853, ¶ 28 (2d Dist.). Another exception to the warrant requirement is a search incident to arrest. *Chimel v. California*, 395 U.S. 752, 763 (1969). Under that exception, the arrestee and the area within the arrestee's immediate control may be searched without a warrant on the rationale that weapons posing a threat to an officer's safety or destructible evidence might be located in this area. *Id.*

{¶ 48} In this case, the video evidence presented at trial showed that Hayes gave the police officers consent to search his vehicle, and they found no contraband during the search. Because the search of the vehicle yielded no contraband, the only relevant issues are whether Hayes's continued detention and subsequent search of his person were unlawful and whether a *Miranda* violation occurred.

{¶ 49} At this juncture, we note that "traffic stops are a form of an investigatory detention." *State v. Williams*, 2025-Ohio-1398, ¶ 15 (2d Dist.), citing *State v. Hale*, 2024-Ohio-4866, ¶ 19 (2d Dist.). Investigatory detentions do not violate the Fourth Amendment "as long as the police have a reasonable, articulable suspicion of criminal activity." (Citations omitted.) *State v. Ramey*, 2016-Ohio-607, ¶ 22 (2d Dist.). "Once a police officer legitimately stops a vehicle for a traffic violation, the driver may be detained for only as long as the officer continues to have reasonable suspicion that there has been a violation of the law." (Citation omitted.) *State v. Desman*, 2003-Ohio-7248, ¶ 26 (2d Dist.). "When *an officer* prolongs a detention to conduct a search, and the search is not related to the original purpose for the stop, the prolonged detention constitutes an illegal seizure if the officer does not have 'articulable facts giving rise to a suspicion of some illegal activity.'" (Emphasis added.) *State*

*v. Spain*, 2011-Ohio-322, ¶ 18 (10th Dist.), quoting *State v. Robinette*, 80 Ohio St.3d 234 (1997), paragraph one of the syllabus.

{¶ 50} Here, the evidence presented at trial established that Hayes, not the officers, prolonged the traffic stop by requesting a medic. Detective Mulcahy testified that had Hayes not asked for a medic, the encounter would have ended, and Hayes would have been free to leave after the fruitless search of his vehicle. There was no unlawful detention, as the officers were just waiting with Hayes until the medic arrived.

{¶ 51} The video evidence showed that to ensure the medic's safety, Mulcahy asked Hayes whether he could search him before he went to the medic. In response to Mulcahy's request, Hayes replied: "You already did." State's Ex. 5.2 and 5.3. Mulcahy clarified that the earlier pat down was not a search. Following this brief explanation, the video revealed that Hayes pulled out a clear plastic bag of methamphetamine from his shorts pocket.

{¶ 52} Based on the video evidence, the bag of methamphetamine was not seized via an illegal search of Hayes's person. Hayes voluntarily disclosed the contraband without any coercion or threats by the officers. Hayes was not constrained in any way. When Mulcahy politely asked if he could search Hayes's person, Hayes was just standing on the street talking to the officers. None of the officers were touching or hovering over him at the time of the detective's request. Instead of declining the request to search his person, Hayes willingly pulled out the bag of methamphetamine from his pocket. The bag of methamphetamine was lawfully obtained by the officers.

{¶ 53} Hayes's voluntary disclosure of the bag of methamphetamine supplied probable cause for the officers to search his person. *See State v. Braun*, 2023-Ohio-1683, ¶ 17 (2d Dist.) (finding that when the defendant voluntarily handed a jar of marijuana from his overalls to an officer, the officer had probable cause to search the defendant's person

whether or not he had reasonable grounds to believe that the defendant was armed or dangerous). Likewise, the officers had probable cause to arrest Hayes for possession of drugs, and "an officer making a lawful arrest may conduct a warrantless search of the arrestee's person and of the area 'within his immediate control.'" *State v. Frazee*, 2015-Ohio-4786, ¶ 10 (2d Dist.), quoting *Chimel,* 395 U.S. at 763. The search of Hayes's person incident to his arrest, which yielded the two bags of cocaine from his underwear, was lawful. We conclude the trial court did not err by failing to suppress the drug evidence.

**{¶ 54}** Regarding the alleged *Miranda* violation, we note that "*Miranda* requires police to give a suspect certain prescribed warnings before custodial interrogation commences and provides that if the warnings are not given, any statements elicited from the suspect through police interrogation in that circumstance must be suppressed." *State v. Petitjean*, 140 Ohio App.3d 517, 523, (2d Dist. 2000). Under *Miranda*, a suspect "must be warned that he [or she] has a right to remain silent, that any statement he [or she] does make may be used as evidence against him [or her], and that he [or she] has a right to the presence of an attorney, either retained or appointed." *In re M.H.*, 2020-Ohio-5485, ¶ 18, quoting *Miranda* at 444.

**{¶ 55}** As shown in the video evidence, Hayes did not make any incriminating statements until after Mulcahy had advised Hayes of his *Miranda* rights, which Hayes indicated he understood. The available record does not establish that a *Miranda* violation occurred. Because there was no *Miranda* violation, there was no basis for the trial court to suppress any of Hayes's incriminating statements.

**{¶ 56}** Hayes's second assignment of error is overruled.

**Third Assignment of Error**

{¶ 57} Under his third assignment of error, Hayes challenges the mandatory prison sentence that he received for his third-degree felony possession of cocaine offense. Hayes claims that the trial court erroneously applied R.C. 2925.11(C)(4)(c) when it ordered his prison sentence to be mandatory.

{¶ 58} As a preliminary matter, we note that pursuant to R.C. 2953.08(G)(2), this court may vacate or modify Hayes's sentence only if we "determine[ ] by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 2016-Ohio-1002, ¶ 1. The sentencing issue raised by Hayes does not relate to any of the relevant statutes listed under R.C. 2953.08(G)(2), so we are tasked with determining only whether his mandatory prison sentence is "otherwise contrary to law." The phrase "otherwise contrary to law" means "in violation of statute or legal regulations at a given time." (Cleaned up.) *State v. Bryant*, 2022-Ohio-1878, ¶ 22. This court has also defined "contrary to law" as "'a sentencing decision [that] manifestly ignores an issue or factor which a statute requires a court to consider.'" *State v. Morgan*, 2023-Ohio-3913, ¶ 7 (2d Dist.), quoting *State v. Lofton*, 2004-Ohio-169, ¶ 11 (2d Dist.).

{¶ 59} R.C. 2925.11(C)(4)(c) provides, in pertinent part, the following:

If possession of cocaine is a felony of the third degree under this division and if the offender two or more times previously has been convicted of or pleaded guilty to a felony drug abuse offense, the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the third degree.

{¶ 60} Under this statutory provision, a prison term for third-degree felony possession of cocaine is mandatory if the offender has two prior felony drug abuse convictions. Hayes does not dispute that he was previously convicted of two felony counts of possession of cocaine in Greene County Common Pleas Court Case No. 2020 CR 0412. Hayes claims, though, that for the mandatory prison time provision of R.C. 2925.11(C)(4)(c) to apply, his two prior felony drug convictions must come from separate cases. Because Hayes's two prior felony drug offenses arose from the same case, he argues that the trial court improperly ordered a mandatory prison term for his third-degree felony possession of cocaine offense.

{¶ 61} The language of R.C. 2925.11(C)(4)(c) in no way indicates that the two predicate felony drug abuse convictions must come from separate cases. A "'conviction' consists of a guilty verdict and the imposition of a sentence or penalty." *State v. Whitfield*, 2010-Ohio-2, ¶ 12. It is well established that a single criminal case involving multiple charged offenses can result in multiple convictions if the offenses are not merged as allied offenses of similar import. After reviewing the online docket for Greene County Case No. 2020-CR-0412,[1] we find that Hayes was sentenced for each of his prior possession of cocaine offenses, and the offenses were not merged as allied offenses of similar import. Therefore, Hayes had met the requirement of having two prior felony drug abuse convictions when he was sentenced by the trial court in this case.

{¶ 62} Although decisions of federal courts constitute only persuasive authority and are not binding on this court, the Sixth Circuit Court of Appeals has adopted a "separate criminal episodes" test for determining whether prior felony drug convictions are separate

---

[1] "[I]t is a common practice for appellate courts to take judicial notice of publicly accessible online court dockets." *State v. Estridge*, 2022-Ohio-208, ¶ 12, fn. 1 (2d Dist.), citing *State v. McClurg*, 2020-Ohio-1144, ¶ 8 (2d Dist.); *State v. Thompson*, 2019-Ohio-5140, ¶ 4, fn. 1 (2d Dist.); *State v. Kempton*, 2018-Ohio-928, ¶ 17 (4th Dist.).

predicate convictions for purposes of applying mandatory sentences under 21 U.S.C. § 841(b)(1)(A). *United States v. Kelsor*, 665 F.3d 684, 700 (6th Cir. 2011). "The test asks whether the convictions arise from 'separate criminal episodes' that are 'distinct in time.'" *Id*.

{¶ 63} In applying the "separate criminal episodes" test, the Sixth Circuit has held that two felony convictions for drug sales to the same government informant that were charged in the same indictment but took place six weeks apart arose from separate episodes, even though the defendant was convicted on both counts the same day. *United States v. Goins*, 53 Fed.Appx. 724, 729-30 (6th Cir.2002). Other federal circuit courts have reached similar conclusions. *See e.g., United States v. Gray*, 152 F.3d 816, 821-22 (8th Cir. 1998) (prior convictions for two felony offenses for drug sales to the same informant occurring one day apart, of which the defendant was convicted in the same trial and for which he received concurrent sentences, amounted to separate episodes); *United States v. Green*, 293 F.3d 886, 894-95 (5th Cir. 2002) (prior convictions for three drug offenses committed within minutes of each other were distinct and countable as separate predicate offenses for a mandatory life sentence under 21 U.S.C. § 841(b)(1)(A), as they involved sales to different individuals and each was a complete transaction in itself).

{¶ 64} Similarly, the Fifth Appellate District has held that even though a criminal defendant was convicted and sentenced for two offenses on the same day, the offenses constituted two separate convictions because they arose from distinct incidents on separate dates. *State v. Summers*, 2020-Ohio-741, ¶ 21 (5th Dist.). Contrasting this case, the defendant before the Fifth District had been convicted in separate criminal proceedings.

{¶ 65} Here, Hayes's two prior felony convictions for possession of cocaine in Greene County Case No. 2020 CR 0412 were charged under the same bill of information. However, the bill of information indicates that the offenses were committed on two separate dates—

August 12, 2019, and August 22, 2019. Because the convictions arose from distinct incidents that occurred on different dates and because the possession offenses were not merged as allied offenses at sentencing, the trial court correctly concluded that Hayes had two prior felony drug convictions for purposes of imposing a mandatory prison term under R.C. 2925.11(C)(4)(c). As a result, the mandatory prison term imposed for Hayes's third-degree felony possession of cocaine offense was not contrary to law.

{¶ 66} Hayes's third assignment of error is overruled.

### Fourth Assignment of Error

{¶ 67} Under his fourth assignment of error, Hayes contends that his possession of cocaine offense and his aggravated possession of drugs offense are allied offenses of similar import that should have been merged into one conviction at sentencing.

### *Standard of Review*

{¶ 68} "An appellate court typically reviews a trial court's merger determination de novo." *State v. Bierma,* 2024-Ohio-2089, ¶ 38 (2d Dist.), citing *State v. Williams*, 2012-Ohio-5699, ¶ 28. Hayes failed to object to the trial court's merger determination at sentencing, so all but plain error has been waived for appeal on this issue. *State v. Bailey*, 2022-Ohio-4407, ¶ 7, citing *State v. Rogers*, 2015-Ohio-2459, ¶ 28. We thus review the trial court's merger determination for plain error.

{¶ 69} "Plain error occurs when an error or defect at trial, not brought to the attention of the court, affects a substantial right of the defendant." *State v. Henderson*, 2020-Ohio-6, ¶ 29 (2d Dist.), citing *Rogers* at ¶ 22. "Plain error exists when but for the error the outcome of the trial clearly would have been otherwise." *Id*. "Courts must proceed on a claim of plain error 'with the utmost caution, under exceptional circumstances and only to prevent a

manifest miscarriage of justice.'" *Id.,* quoting *State v. Long,* 53 Ohio St.2d 91 (1978), paragraph three of syllabus.

{¶ 70} We note that "[i]n the past, this court has stated on various occasions that a trial court's failure to merge allied offenses of similar import at sentencing constitutes plain error." *Bierma* at ¶ 40, citing *State v. Hodge,* 2022-Ohio-1780, ¶ 44 (2d Dist.); *State v. King,* 2021-Ohio-4229, ¶ 28 (2d Dist.); *State v. Shoecraft,* 2018-Ohio-3920, ¶ 56 (2d Dist.); *State v. Rogers,* 2012-Ohio-4451, ¶ 5 (2d Dist.); *State v. Fairman,* 2011-Ohio-6489, ¶ 56 (2d Dist.). "More recently, however, we have recognized that the Supreme Court of Ohio has indicated that the failure to merge allied offenses does not automatically constitute plain error." *Bierma* at ¶ 40, citing *State v. Morris,* 2023-Ohio-1765, ¶ 24 (2d Dist.); *State v. Hess,* 2023-Ohio-3658, ¶ 11 (2d Dist.), citing *Bailey.* Therefore, "the proper standard is not that failure to merge allied offenses 'is' plain error," but rather it "'may' be plain error, depending on the circumstances." *Morris* at ¶ 27.

*Allied Offense Law*

{¶ 71} The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution prohibit a criminal defendant from being tried twice for the same offense and from receiving multiple punishments for the same offense. *State v. Pendleton,* 2020-Ohio-6833, ¶ 8, citing *State v. Ruff,* 2015-Ohio-995, ¶ 10. "The Ohio General Assembly enacted R.C. 2941.25 to help a court faced with sentencing a defendant on multiple offenses to determine whether the legislature intended to allow multiple punishments or whether those offenses should merge." (Citations omitted.) *State v. Childs,* 2024-Ohio-4699, ¶ 63 (10th Dist.). Therefore, when a defendant's conduct supports multiple offenses, sentencing courts apply the analysis set forth in R.C. 2941.25 to

determine whether the offenses merge or whether the defendant may be convicted of separate offenses.

{¶ 72} R.C. 2941.25 provides the following:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 73} "'[W]hen determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions . . . (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation?'" *State v. Earley*, 2015-Ohio-4615, ¶ 12, quoting *Ruff* at ¶ 31. "'An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.'" *Id.*, quoting *Ruff* at ¶ 31.

{¶ 74} "[T]he General Assembly has made it clear from its decision to create separate offenses based on drug classification that drugs of different types can be punished separately." *Pendleton*, 2020-Ohio-6833 at ¶ 18, citing *State v. Delfino*, 22 Ohio St.3d 270, 274 (1986). Therefore, "simultaneous possession of different controlled substances constitutes separate offenses pursuant to R.C. 2925.11, for the purposes of double

jeopardy[.]" *Delfino* at 273; *accord State v. Holloway*, 2018-Ohio-4636, ¶ 79 (2d Dist.); *State v. Huber,* 2011-Ohio-6175, ¶ 6-9 (2d Dist.).

{¶ 75} Moreover, where possession offenses "involve different, separated drugs rather than drugs combined into one mixture, appellate courts generally hold that drug-related offenses should not merge under *Ruff* and R.C. 2941.25." *Childs*, 2024-Ohio-4699 at ¶ 69 (possession of cocaine offense did not merge with possession and trafficking in fentanyl offenses where the fentanyl was packaged separately); *State v. Johnson*, 2025-Ohio-1009, ¶ 53-54 (3d Dist.) (three trafficking counts that related to three different types of drugs—cocaine, heroin, and fentanyl—did not merge where each type of drug was contained in separate plastic bags that were located inside one large bag that the defendant pulled from his pants); *State v. Jones*, 2024-Ohio-2959, ¶ 61-63 (3d Dist.) (two aggravated possession counts did not merge where methamphetamine was discovered on the same day in the defendant's residence, but the methamphetamine was "in different forms" and "packaged separately"). *Compare Pendleton* at ¶ 19-20 (holding that "the imposition of two punishments for the same, singular quantity of drugs violated the Double Jeopardy protections of the Ohio and United States" where the mass of the drugs could not simultaneously sustain the two weight-based trafficking offenses prosecuted by the state).

{¶ 76} In this case, Hayes's aggravated possession of drugs conviction was based on him voluntarily pulling out a bag of methamphetamine from his pocket. Hayes's possession of cocaine conviction was based on the detective subsequently finding two bags of cocaine inside Hayes's underwear. Although Hayes possessed cocaine and methamphetamine at the same time and the drugs were recovered during a single interaction with law enforcement, he still possessed two different types of drugs kept in separate packages and recovered from different parts of his person. Under these

circumstances, the trial court did not err plainly or otherwise by not merging Hayes's offenses.

{¶ 77} Hayes's fourth assignment of error is overruled.

**Fifth Assignment of Error**

{¶ 78} Under his fifth assignment of error, Hayes contends that his convictions for possession of cocaine and aggravated possession of drugs were not supported by sufficient evidence and were against the manifest weight of the evidence. This argument is based solely on Hayes's claim that the State failed to establish a clear chain of custody for the cocaine and methamphetamine evidence.

*Sufficiency of Evidence*

{¶ 79} "When a defendant challenges the sufficiency of the evidence, [he or] she is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law." *State v. Matthews*, 2018-Ohio-2424, ¶ 7 (2d Dist.), citing *State v. Hawn*, 138 Ohio App.3d 449, 471 (2d Dist. 2000). "'An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997), citing *Jenks* at 503.

**{¶ 80}** Hayes was convicted of one count of possession of cocaine in violation of R.C. 2925.11(A), based on the bags of cocaine found in his underwear, and one count of aggravated possession of drugs in violation of R.C. 2925.11(A)/(C)(1)(a), based on the bag of methamphetamine that Hayes pulled from his pocket. R.C. 2925.11(A) provides, in relevant part, that "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." It is well established that both cocaine and methamphetamine are controlled substances. *See* R.C. 2925.01(A), 3719.01(C), and 3719.41; *see also* 21 U.S.C.A. § 812.

**{¶ 81}** Hayes argues that his two drug convictions were not supported by sufficient evidence because the State failed to prove a clear chain of custody for the methamphetamine and cocaine. "'A chain of custody is part of the authentication and identification mandate set forth in [Evid.R. 901], and the state has the burden of establishing the chain of custody of a specific piece of evidence before it can be admitted at trial.'" *State v. Ayers*, 2013-Ohio-5337, ¶ 10 (2d Dist.), quoting *State v. Rodriguez*, 2006-Ohio-2121, ¶ 16 (6th Dist.). "In order to meet its burden in establishing the chain of evidence, 'the state need only establish that it is reasonably certain that substitution, alteration, or tampering did not occur.'" *State v. Rajchel*, 2003-Ohio-3975, ¶ 21 (2d Dist.), quoting *State v. Qualls*,1997 WL 311634, *5 (2d Dist. June 6, 1997); *accord State v. Maranger*, 2018-Ohio-1425, ¶ 74 (2d Dist.). "'[T]he State [is] not required to prove a perfect, unbroken chain of custody.'" *State v. Gross*, 2002-Ohio-5524, ¶ 57, quoting *State v. Keene*, 81 Ohio St.3d 646, 662, (1998); *accord State v. Jordan*, 2016-Ohio-603, ¶ 52 (2d Dist.). Under these principles, "'[a] strict chain of custody is not always required in order for physical evidence to be admissible.'" *Gross* at ¶ 57, quoting *State v. Wilkins*, 64 Ohio St.2d 382, 389 (1980); *accord State v. Ramos*, 2019-Ohio-3588, ¶ 24 (2d Dist.).

{¶ 82} Importantly, "'[b]reaks in the chain of custody go to the weight of the evidence, not to its admissibility.'" *State v. Wiley*, 2012-Ohio-512, ¶ 13 (2d Dist.), quoting *State v. High*, 143 Ohio App.3d 232, 248 (7th Dist. 2001). Because "'a break in the chain of custody goes to the credibility or weight of the evidence, and not its admissibility, chain of custody is not an appropriate consideration on a claim that the State presented insufficient evidence to allow a rational trier of fact to find the elements of the crime proven beyond a reason [sic] doubt." (Bracketed text in original.) *State v. Bazler*, 2018-Ohio-5306, ¶ 11 (5th Dist.), quoting *State v. Bias*, 2002-Ohio-4539, ¶ 12 (5th Dist.); *accord State v. Corder*, 2012-Ohio-1995, ¶ 9 (4th Dist.).

{¶ 83} Hayes did not object to the admission of the drug evidence at trial nor did he challenge its admissibility as plain error on appeal. Because of this, and because any alleged deficiencies or irregularities in the chain of custody go to the weight of the drug evidence, Hayes's sufficiency of the evidence argument is inappropriate and thus not well taken.

*Manifest Weight of the Evidence*

{¶ 84} "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Wilson*, 2009-Ohio-525, ¶ 12 (2d Dist.), citing *State v. Hufnagle*, 1996 WL 501470 (2d Dist. Sept. 6, 1996). When evaluating whether a conviction was against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v.*

*Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A judgment of conviction should be reversed as against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 85} Hayes argues that his drug possession convictions were against the manifest weight of the evidence because there was an unclear chain of custody for the cocaine and methamphetamine underlying his offenses. Given the trier of fact's well-established role to determine the weight of evidence in a case, it was the province of the jury to decide the persuasive value of the drug evidence in Hayes's trial considering any breaks or irregularities in the chain of custody. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus; *Ramos*, 2019-Ohio-3588, at ¶ 25 (2d Dist.); *Maranger*, 2018-Ohio-1425, at ¶ 74 (2d Dist.).

{¶ 86} After reviewing the entire record, weighing all the evidence and reasonable inferences, and considering witness credibility, we do not find that the jury lost its way or created a manifest miscarriage of justice by concluding that the cocaine and methamphetamine presented at trial were the same substances seized from Hayes during the August 9, 2023 traffic stop. Detective Mulcahy testified that he had collected the cocaine and methamphetamine from Hayes's person and put the drugs in the trunk of his police cruiser. Mulcahy indicated that, after he had taken Hayes to jail, he went straight to the police department, retrieved the drugs from the trunk of his cruiser, and booked the drugs into the property room with Detective Osburn. Mulcahy confirmed that Osburn handled the drugs during the booking process. Mulcahy explained that his initials were not on the packaged drug evidence "because Det. Osburn did the packaging and paperwork." Trial Tr. 74.

{¶ 87} Osburn confirmed that he had met with Mulcahy in the property room. Osburn testified that Mulcahy had brought the drugs into the property room and that they:

[C]ollected weights, photographed the weights, [and] conducted a presumptive field test on the items. After the weights and tests were done, they are placed in this plastic sealable material, and then we seal both sides, which is initialed with my initials. And then from there, it's documented on our property sheet . . . , and then it's placed into a lockable locker in our Property Room.

Trial Tr. 148.

{¶ 88} Osburn and Mulcahy identified the drugs in their sealed plastic packaging as the same drugs collected from Hayes on the evening of August 9, 2023. In addition to identifying the sealed packages of drugs, Osburn identified the property sheet that he had filled out while booking the drugs into the property room. *See* State's Ex. 3.6. Osburn testified that the property sheet showed, among other things, that on August 9, 2023, at 8:07 p.m. he booked 1.73 grams of suspected methamphetamine, 6.83 grams of suspected cocaine, and 10.6 grams of suspected cocaine.

{¶ 89} The police department's property room manager, Officer Alan Kraker, also testified at trial and explained that evidence is submitted into a pass-through intake locker in the property room that only he can access. Kraker explained that upon receiving evidence in the property room, he marks his initials on the evidence and then enters it into the police department's records management system, which keeps a chain of custody report. According to Kraker, every individually sealed and packaged piece of evidence is entered into the police department's records management system and given a bar code sticker that has an assigned case number and task force number. Kraker confirmed that once he logs evidence into the records management system, the evidence remains in the property room unless it is sent out for lab analysis or for some other reason.

{¶ 90} Kraker testified that if a piece of evidence needs to be sent out for lab analysis, either he will transport the evidence to the lab himself, or an officer will come and retrieve the evidence from him by signing it out of the property room. Such exchanges are logged into a chain of custody report. At trial, Kraker identified portions of a chain of custody report showing that on August 10, 2023, Osburn had picked up the drug evidence in question from the property room for transport to the Hamilton County Crime Lab. *See* State's Ex. No. 3.1, 3.2, and 3.3. Kraker also identified the portion of the chain of custody report showing that Osburn had returned the drug evidence to the property room on August 29, 2023. *Id*.

{¶ 91} Osburn's testimony aligned with the chain of custody report. He testified that on August 10, 2023, he collected the drugs from the property manager and transported them to the Hamilton County Crime Lab. To Osburn's knowledge, the drugs remained at the crime lab until he returned to pick them up on August 29, 2023. Osburn also confirmed that he "transported [the drugs] back to the Fairborn Property Room and then booked them back into—via the similar process in the lockers and the Property Room." Trial Tr. 161. In doing so, Osburn "would have put [the drugs] in a locker, which would, in turn cause the Property manager to receive them and book them in." Trial Tr. 182. Osburn said that he was sure the drugs went through this process because they were booked back into the property room after he had received them from the crime lab.

{¶ 92} Suzanne Elliott—the crime lab's forensic scientist who tested the drugs—testified that the drug evidence was marked and sealed when she received it, and that all the marks and seals were checked before the evidence was worked on. Elliott indicated that the evidence was given a unique case number and bar code and was brought into a locked area that only the drug chemists can access. Elliott identified the three sealed packages of drugs that were collected from Hayes as the same packages of drugs that she tested. Once

Elliott's lab testing was completed, the evidence was returned to the lab's evidence receiving staff who notified the associated police agency that the lab report was finished and that the drug evidence was ready to be retrieved.

{¶ 93} The jury was entitled to credit the testimony of Mulcahy, Osburn, Kraker, and Elliott regarding the collection and handling of the drug evidence. When considering that testimony, we find that the balance of the evidence indicates that the cocaine and methamphetamine presented at trial were the same substances seized from Hayes on August 9, 2023, and that there was no break or irregularity in the chain of custody. Accordingly, Hayes's claim that his convictions were against the manifest weight of the evidence based on an unclear chain of custody for the drugs lacks merit.

{¶ 94} Hayes's fifth assignment of error is overruled.

## Conclusion

{¶ 95} Having overruled all five assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

LEWIS, J., and HUFFMAN, J., concur.